TIMOTHY P. WHELAN, Plaintiff-Appellee, v. THE COUNTY OFFICERS' ELECTORAL BOARD OF DU PAGE COUNTY, Defendant (Vernon W. Miller, Objector-Appellant).

Second District No. 2—94—0110

Opinion filed March 3, 1994.

Sam J. Filippo, of Grief, Bus & Blacklidge, P.C., of West Chicago, for appellant Vernon W. Miller.

Michael C. Wiedel, of Bowers, Carney, Wiedel & Slansky, of Downers Grove, for County Officers' Electoral Board of Du Page County.

Timothy P. Whelan, of Gomolinski & Whelan, P.C., of Wheaton, appellee *pro se.*

JUSTICE QUETSCH delivered the opinion of the court:

Timothy P. Whelan filed a petition seeking to have his name placed on the ballot for the March 15, 1994, Republican primary for the office of State senator for the 20th legislative district. Vernon W. Miller objected to the petition, challenging the validity of certain signatures appearing on the petition, and claiming that the remaining signatures were insufficient in number to authorize Whelan's name to be placed on the ballot. The county officers' electoral board of Du Page County (the board) essentially adopted a hearing officer's findings and concluded that Whelan's petition contained only 557 valid signatures. The board and Miller have since conceded that the board improperly excluded two valid signatures, so that the total number of valid signatures is 559. Since 600 signatures were necessary (10 ILCS 5/8—8 (West 1992)), the board determined that Whelan's name should not appear on the ballot.

Whelan filed a petition for judicial review in the circuit court of Du Page County, challenging the board's decision with respect to 47 of the signatures the board had excluded. On January 20, 1994, following arguments by the parties, the circuit court found that the 47 signatures in question were improperly excluded and ordered that Whelan's name be placed on the ballot. Miller appeals from that order. For the reasons set forth below, we affirm.

Of the signatures in question, the board found one to be invalid because the signer was registered to vote at a different address from that shown opposite her signature on the petition. The dispute apparently centered upon the legibility of the handwritten address on the petition. The circuit court concluded that the address on the petition could be read to be the same address listed for the signer in voter registration records and found that the board's decision to disqualify the signature was against the manifest weight of the evidence.

The other 46 signatures at issue appear on petition sheets circulated by Susan Erickson, who collected 40 signatures, and Sylvia Ferry, who collected 6 signatures. The board disqualified these signatures because Ms. Erickson and Ms. Ferry were registered to vote at addresses which were different from the addresses set forth in their circulator's affidavits at the bottom of the petition sheets. The circuit court essentially concluded that the Election Code (10 ILCS 5/1—1 *et seq.* (West 1992)) imposes no requirement that the address in the circulator's affidavit match the address where he or she is registered to vote.

We first consider the circuit court's ruling with regard to the signatures on petition sheets circulated by Ms. Erickson and Ms. Ferry. The nomination of candidates for membership in the General Assembly is governed by article 8 of the Election Code. (10 ILCS 5/8—1 (West 1992).) Section 8—8 of the Election Code sets forth the requirements for the nominating petitions for such candidates and provides in pertinent part:

"All petitions for nomination for the office of State Senator shall be signed by 1% or 600, whichever is greater, of the qualified primary electors of the candidate's party in his legislative district, except that for the first primary following a redistricting of legislative districts, such petitions shall be signed by at least 600 qualified primary electors of the candidate's party in his legislative district.

\*\*\*

Opposite the signature of each qualified primary elector who signs a petition for nomination for the office of State Representa-

tive or State Senator such elector's residence address shall be
written or printed. ***

* * *

In the affidavit at the bottom of each sheet, the petition circulator, *who shall have been a registered voter at all times he or she circulated the petition,* shall state his street address or rural route number, as the case may be, as well as his city, village or town." (Emphasis added.) 10 ILCS 5/8—8 (West Supp. 1992).

It appears to be undisputed that Ms. Erickson and Ms. Ferry were registered voters at the time they circulated Whelan's petition, although they were registered at different addresses than were set forth in their affidavits on the challenged petition sheets. Apparently, both had moved from the addresses where they were registered, but had not transferred their registration to their new addresses. As noted above, section 8—8 requires that the petition circulator be registered to vote and that the circulator's affidavit indicate his or her address. Although in its written decision the board found that Ms. Erickson and Ms. Ferry were "registered to vote at addresses other than those stated on the circulators' affidavits," in the proceedings before the circuit court, the board and Miller suggested that Ms. Erickson's and Ms. Ferry's uncorrected registration at former addresses may no longer have been valid. Neither the board nor Miller cited any authority for this proposition during the proceedings below, and Miller has not pursued this line of reasoning in this appeal. Accordingly, we express no opinion on that possibility.

The sole question before us is whether the petition sheets circulated by Ms. Erickson and Ms. Ferry are invalid because the addresses in their circulator's affidavits do not match the addresses where they were registered to vote. While section 8—8 itself does not contain such a requirement, Miller relies on section 3—1.2 of the Election Code, which provides, in pertinent part:

"For the purpose of determining eligibility to sign a nominating petition *** the terms 'voter', 'registered voter', 'qualified voter', 'legal voter', 'elector', 'qualified elector', 'primary elector' and 'qualified primary elector' *** shall mean a person who is registered to vote at the address shown opposite his signature on the petition or was registered to vote at such address when he signed the petition." (10 ILCS 5/3—1.2 (West 1992).)

Miller's reasoning, though not expressed with great clarity, is apparently that because the addresses in Ms. Erickson's and Ms. Ferry's affidavits were different from their voter registration addresses, they were not "registered voters" within the meaning of section 3—1.2 and were therefore ineligible to sign the circulator's affidavits

on the petition sheets. We have found no indication in the record that either Miller or the board raised this argument during the proceedings below, and for that reason alone the argument might be considered waived. (See, *e.g., Vance v. Wentling* (1993), 249 Ill. App. 3d 867, 872.) Nevertheless, we find Miller's argument to be without merit.

The resolution of Miller's argument depends upon the meaning of the phrase "eligibility to sign a nominating petition" in section 3—1.2. Miller's argument is premised on the understanding that section 3—1.2 refers not only to those signatures which count toward the numerical signature requirement, but instead refers to all signatures physically present on the petition, including the circulator's affidavit signature. We think this is a strained reading of the provision.

Since our task is one of statutory interpretation, it may be useful to review some of the familiar principles that guide us in performing that function. The cardinal rule of statutory construction, to which all other canons and rules are subordinate, is to ascertain and give effect to the true intent and meaning of the legislature. (*Solich v. George & Anna Portes Cancer Prevention Center* (1994), 158 Ill. 2d 76, 81.) In doing so, the courts should look first to the statutory language, since the language of the statute is the best indication of the legislature's intent. (*Solich*, 158 Ill. 2d at 82.) Where the language of a statute is clear, a court must give it effect. (*West v. Kirkham* (1992), 147 Ill. 2d 1, 6.) However, the task is not always properly accomplished by the mechanical application of the dictionary definitions of the individual words and phrases involved. "When construing statutes, text must always be read in context." (*Illinois Power Co. v. Mahin* (1977), 49 Ill. App. 3d 713, 716, *aff'd* (1978), 72 Ill. 2d 189.) We have likewise observed that "[i]n construing a statute, the court should examine not only the statutory language, but its context and purpose as well. To ascertain the legislature's intent, the court will examine the entire statute and determine the objective the statute seeks to accomplish and the evils it is designed to remedy." (*Tersavich v. First National Bank & Trust Co.* (1990), 194 Ill. App. 3d 972, 978, *aff'd* (1991), 143 Ill. 2d 74.) Courts must shy away from reading language too literally (*Mahin*, 49 Ill. App. 3d at 716) and should be sensitive to instances where " '[a] restrictive meaning for what appear to be plain words may be indicated by the Act as a whole.' " *People v. Zaremba* (1994), 158 Ill. 2d 36, 43 (Miller, J., dissenting), quoting *United States v. Witkovich* (1957), 353 U.S. 194, 199, 1 L. Ed. 2d 765, 769, 77 S. Ct. 779, 782.

Applying these principles we conclude that the legislature did

not intend that the phrase "eligibility to sign a nominating petition" should apply to the petition circulator's affidavit signature. We think the ordinary understanding of a signature on a written petition is the signature of an individual endorsing the request for action which is the subject of the petition. The circulator's affidavit serves a different function principally related to the authentication of the petition. We think the legislature had this ordinary understanding of the phrase in mind when it enacted section 3—1.2. We find it significant that, in 1983 when section 3—1.2 was enacted (Pub. Act 83 999, § 1, eff. December 13, 1983), section 8—8 governing nominating petitions for candidates to the General Assembly did not expressly require that the circulator be a registered voter, although that requirement did exist for circulators of petitions under other sections of the Election Code. (See 10 ILCS 5/7—10, 10—4 (West 1992).) The requirement that the circulator be a registered voter was added to section 8—8 in 1992. (Pub. Act 87—1052, § 3, eff. September 11, 1992.) Thus the legislature could not have contemplated the interpretation and application of section 3—1.2 that Miller proposes in the case at bar.

Miller's argument is also at odds with the phraseology of the applicable provisions. Section 3—1.2 refers to the address "shown opposite" a signature on the petition. This tracks the language in section 8—8 requiring that "[o]pposite the signature of each qualified primary elector who signs a petition *** such elector's residence address shall be written or printed." (10 ILCS 5/8—8 (West 1992).) In contrast, section 8—8 requires that the petition circulator "state his [address]" in his or her affidavit, but does not specify that the address be positioned "opposite" the circulator's affidavit signature. Thus, as far as nominations under section 8—8 are concerned, it appears that in section 3—1.2 the legislature had the signatures of "qualified primary electors" in mind.

We therefore conclude that while the circulator must be a registered voter, the Election Code does not require that the address in the circulator's affidavit on a petition under section 8—8 be identical to the address where the circulator is registered to vote. Therefore, the circuit court correctly ruled that the 46 signatures on petition sheets circulated by Ms. Erickson and Ms. Ferry were valid. With the addition of these signatures, Whelan collected a sufficient number of signatures to authorize the placement of his name on the primary ballot, and it is therefore unnecessary to address the circuit court's ruling on the single remaining individual signature in dispute.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

560

Affirmed.

GEIGER and DOYLE, JJ., concur.