RONALD "RINK" LUCAS, Plaintiff and Defendant-Appellee, v. L. THOMAS LAKIN, Defendant and Plaintiff-Appellant (The County Officers Electoral Board of Madison County, Debbie Saltich *et al.*, as Members, Defendants).

Fifth District    No. 5—96—0119

Opinion filed March 14, 1996.

Roy C. Dripps and Gail G. Renshaw, both of Lakin Law Firm, of Wood River, for appellant.

Carl R. Draper, of Feldman & Wasser, of Springfield, for appellee Ronald P. Lucas.

No brief filed for appellee County Officers Electoral Board of Madison County.

JUSTICE KUEHN delivered the opinion of the court:

Following a hearing, the County Officers Electoral Board of Madison County removed Ronald "Rink" Lucas (Lucas) from the Democratic primary election ballot. L. Thomas Lakin (Lakin) appeals from a trial court order reinstating Lucas' name on the Democratic primary election ballot. At issue in this case is whether a nomination petition circulator's voter registration address and residential address must be the same. We find that the addresses should match and we reverse.

On December 11, 1995, Lucas filed a nomination petition as a Democratic candidate for the office of Madison County recorder. The nomination petition contained 330 signatures on 20 separate sheets. Two hundred fifty-five signatures are required to nominate a candidate for the office of Madison County recorder. On December 22, 1995, Lakin filed objections to Lucas' nomination petition based upon several Election Code violations (10 ILCS 5/1—1 *et seq.* (West 1994)). The County Officers Electoral Board of Madison County (the Board), comprised of Debbie Saltich, William R. Haine and Matt Melucci, held a hearing on January 9, 1996. On January 11, 1996, the Board sustained some objections, disallowed others and determined that Lucas had only 244 remaining valid signatures. The Board ordered the removal of Lucas' name from the March 19, 1996, Democratic primary election ballot.

In accordance with section 10—10.1 of the Election Code (10 ILCS 5/10—10.1 (West 1994)), both parties filed complaints in Madison County circuit court seeking judicial review of the Board's decision. Lucas challenged a portion of the Board's order invalidating one complete sheet of his nomination petition (20 signatures) on the basis that one of the circulators of the nomination petition, Aaron Wanagat, listed an address on the petition different from the address at which he was registered to vote. Lakin challenged the Board's findings disallowing his objections to two pages of the petition on the

basis that the notary public, Anthony Barbarotto, insufficiently administered the statutorily required oath. 10 ILCS 5/10—10.1 (West 1994).

On February 2, 1996, the trial court held its hearing on both complaints. On February 5, 1996, the trial court entered its order sustaining Lucas' complaint and denying Lakin's complaint, raising the total valid signatures to 264 and allowing Lucas' name to be placed on the March 19, 1996, Democratic primary election ballot. Lakin appeals.

The findings of the electoral board will not be reversed on review or appeal unless they are against the manifest weight of the evidence. *Greene v. Board of Election Commissioners*, 112 Ill. App. 3d 862, 870-71, 445 N.E.2d 1337, 1343 (1983). The trial court based its decision upon two cases, *Whelan v. County Officers' Electoral Board*, 256 Ill. App. 3d 555, 629 N.E.2d 842 (1994), and *Bass v. Hamblet*, 266 Ill. App. 3d 1110, 641 N.E.2d 14 (1994). *Whelan*, a second district case, and *Bass*, a first district case, both held that a circulator's address on a nomination petition need not be the same address at which the circulator is registered to vote. The trial court had no choice but to follow the precedent. However, the decision of one appellate district is not binding on other appellate districts. *State Farm Fire & Casualty Co. v. Yapejian*, 152 Ill. 2d 533, 539, 605 N.E.2d 539, 542 (1992).

The language of the Election Code provides the basis for an analysis of whether a circulator must have the same residential address at which he is registered to vote.

■ Section 8—8 of the Election Code states that at the bottom of the nomination petition, the petition circulator, "who shall have been a registered voter at all times he or she circulated the petition," must execute an affidavit listing his complete address, including street address and city. 10 ILCS 5/8—8 (West 1994). Section 8—8 includes no definition of "registered voter," and contains no explicit requirement that the address at which the circulator is registered to vote match the residential address listed on the affidavit. Section 8—8 also does not state that the addresses can differ.

Section 10—4 of the Election Code contains requirements for the nomination petition and lists circulator duties, stating:

"At the bottom of each sheet of such petition shall be added a statement, signed by a registered voter of the political division, who has been a registered voter at all times he or she circulated the petition, for which the candidate or candidates shall be nominated; stating the street address or rural route number of the voter, as the case may be, as well as the voter's city, village or

town certifying that the signatures on that sheet of the petition were signed in his presence ***." 10 ILCS 5/10—4 (West 1994).

The terms "registered voter" and "voter" are defined in the context of eligibility to sign a nomination petition as "a person who is registered to vote at the address shown opposite his signature on the petition or was registered to vote at such address when he signed the petition." 10 ILCS 5/3—1.2 (West 1994).

The two cases relied upon by the trial court, *Bass* and *Whelan*, did not analyze the circulator address issue on the basis of section 10—4 requirements, focusing instead upon section 8—8 and section 3—1.2.

■ Section 3—1.2 codified an earlier court decision, *Greene v. Board of Election Commissioners*, where the term "registered voter" was first defined in the context of a nomination petition. In *Greene*, the court construed section 10—4 of the Election Code to require identical voter registration and residential addresses for all qualified voters who sign nomination petitions. *Greene*, 112 Ill. App. 3d at 869, 445 N.E.2d at 1342. The court stated that to hold otherwise would create a series of loopholes for unscrupulous candidates and "unnecessarily obfuscate the clear purpose of section 10—4, which seeks to preserve the integrity of the election process by insuring that signers of nominating petitions be duly registered voters in the political division in which they reside." *Greene*, 112 Ill. App. 3d at 869, 445 N.E.2d at 1342-43.

While *Greene* dealt with voters who merely contribute their names to a nomination petition, the court went further in its opinion to discuss the applicability of the requirement of identical addresses in the context of a circulator, stating that its holding "comports with the clear intent of section 10—4" and is supported by the fact that section 10—4 requires that the circulator be a registered voter and provide a residential address. *Greene*, 112 Ill. App. 3d at 870, 445 N.E.2d at 1343. In the circulator context, the court discussed the Election Code meaning of "residence" and concluded that a person may not have a permanent residence in two places at the same time. *Greene*, 112 Ill. App. 3d at 870, 445 N.E.2d at 1343, citing *Delk v. Board of Election Commissioners*, 112 Ill. App. 3d 735, 738, 445 N.E.2d 1232, 1235 (1983); *Stein v. County Board of School Trustees*, 85 Ill. App. 2d 251, 255-57, 229 N.E.2d 165, 167-68 (1967), *aff'd*, 40 Ill. 2d 477, 240 N.E.2d 668 (1968); *Anderson v. Pifer*, 315 Ill. 164, 167, 146 N.E. 171, 173 (1924).

The purpose of requiring the same addresses for voters who sign nomination petitions involves verification. If the addresses do not match, verifying a voter's registration could be extremely difficult,

perhaps requiring a statewide voter records search. *Greene*, 112 Ill. App. 3d at 869, 445 N.E.2d at 1343.

Our legislature requires that a circulator provide his residential address and be registered to vote at all times he circulated the petition. 10 ILCS 5/8—8 (West 1994). As the circulator's affidavit serves to authenticate the petition, verification of the circulator's eligibility is compelling. See *Whelan*, 256 Ill. App. 3d at 559, 629 N.E.2d at 845. Just as with voters who sign a petition, verification that a circulator is in compliance with the requirements of sections 8—8 and 10—4 would be difficult, and potentially impossible, if the residential and voter registration addresses were not identical. Requiring the same address assists in verification of a circulator's eligibility.

■ Overall, it is clear that our legislature requires voter addresses so that those addresses can be verified for eligibility to sign and circulate a nomination petition. The address requirement safeguards the public against fraudulent nomination petitions.

The courts in *Bass* and *Whelan* did not apply the section 3—1.2 definition to circulators. *Whelan*, 256 Ill. App. 3d at 558-59, 629 N.E.2d at 845; *Bass*, 266 Ill. App. 3d at 1112-13, 641 N.E.2d at 16. We find that section 3—1.2 is not that restrictive. Both sections 8—8 and 10—4 mandate that only a "registered voter" can be a circulator. Furthermore, both sections require that the circulator sign the nomination petition to authenticate it. Section 10—4 never refers to the individual circulating a petition as a circulator, instead referring to this individual alternatively as a "registered voter" and as a "voter." Section 3—1.2 references "registered voter" and "voter" eligibility to "sign" a nomination petition. As voters and circulators "sign" the petition, the 3—1.2 definition is equally applicable to circulators. As further support for this interpretation, section 3—1.2 is viewed as codification of the *Greene* opinion. The *Greene* court determined that its "registered voter" definition comported with the section 10—4 requirements for a circulator affidavit. *Greene*, 112 Ill. App. 3d at 870, 445 N.E.2d at 1343.

We find that the "registered voter" definition should apply equally to voters who sign a nomination petition and to the individual charged with the duty to authenticate those signatures.

Because we find that the first issue is dispositive, we do not address Lakin's second issue regarding the sufficiency of the notary public's oath.

For the foregoing reasons, the judgment of the circuit court of Madison County is reversed and this cause remanded with directions to strike Ronald "Rink" Lucas' name from the March 19, 1996,

Democratic primary ballot. This court further directs the clerk to issue the mandate *instanter*.

Reversed and remanded with directions.

HOPKINS, P.J., and GOLDENHERSH, J., concur.