(No. 80719

RONALD "RINK" LUCAS, Appellant, v. L. THOMAS
LAKIN *et al.*, Appellees.

*Opinion filed January 30, 1997.*

Carl R. Draper, of Feldman & Wasser, of Springfield, for appellant.

Gail G. Renshaw and Roy C. Dripps, of the Lakin Law Firm, of Wood River, for appellees.

JUSTICE McMORROW delivered the opinion of the court:

The question presented in this appeal is whether an individual sheet of a nominating petition which is filed pursuant to section 7—10 of the Election Code (10 ILCS 5/7—10 (West 1994)) is rendered invalid if the address set forth within the circulator's affidavit at the bottom of the petition sheet does not match the address where the circulator of the sheet is registered to vote. The fifth district of the appellate court answered this question affirmatively.[1] 278 Ill. App. 3d 163. We granted leave to

---

[1]The electoral board which first considered this case determined that the nominating petition at issue is governed by section 10—4 of the Election Code (10 ILCS 5/10—4 (West 1994)). The circuit court and appellate court proceeded under the same assumption. Before this court, the parties have acknowledged

appeal (155 Ill. 2d R. 315) and now reverse the judgment of the appellate court.

## Background

On December 11, 1995, Ronald P. "Rink" Lucas (Lucas) filed a nominating petition seeking to have his name placed on the ballot for the March 19, 1996, Democratic primary for the office of Madison County recorder. The nominating petition consisted of 20 individual sheets containing a total of 330 signatures. Two hundred fifty-five valid signatures were required to secure a position on the primary election ballot.

On December 22, 1995, L. Thomas Lakin (Lakin) filed an objector's petition (see 10 ILCS 5/10—8 (West 1994)) in which he contested the validity of numerous signatures on Lucas' nominating petition and asserted that there was an insufficient number of valid signatures remaining on the petition to warrant placing Lucas' name on the primary election ballot. In the portion of the objector's petition relevant here, Lakin alleged that the circulator of the first sheet of Lucas' nominating petition, Aaron Wanagat (Wanagat), was not registered to vote at the address listed in the circulator's affidavit on that sheet. Thus, according to Lakin, Wanagat was not a valid circulator and the sheet, which contained 20 signatures, had to be stricken in its entirety.

On January 9, 1996, the Madison County officers electoral board (the Board) held a hearing pursuant to section 10—9 of the Election Code (10 ILCS 5/10—9 (West 1994)) to consider Lakin's objections. In a written decision issued on January 11, 1996, the Board found, *inter alia*, that Wanagat was a registered voter of Madi-

---

that the nominating petition is, in fact, governed by section 7—10 of the Election Code (10 ILCS 5/7—10 (West 1994)). However, the relevant language of section 10—4 is essentially identical to the language found in section 7—10. Thus, the lower courts' analysis remains largely unaffected by this error.

son County. However, the Board also found that Wanagat was registered to vote at an address other than the one listed in the circulator's affidavit on the petition sheet. The Board ruled that Wanagat was therefore not a valid circulator and that the first sheet of Lucas' nominating petition was void. As a result of this ruling, and others made by the Board, Lucas' nominating petition had only 244 valid signatures—11 short of the 255 required. Accordingly, the Board ordered that Lucas' name not appear on the ballot for the primary election.

Lucas sought judicial review of the Board's decision in the circuit court of Madison County. See 10 ILCS 5/10—10.1 (West 1994). Following a hearing held on February 2, 1996, the circuit court entered judgment reversing the Board's decision regarding the validity of the first petition sheet. The circuit court based its judgment on two appellate court decisions, *Bass v. Hamblet*, 266 Ill. App. 3d 1110 (1st Dist. 1994), and *Whelan v. County Officers' Electoral Board*, 256 Ill. App. 3d 555 (2d Dist. 1994). Both of these decisions held that the relevant provisions of the Election Code do not require that the address in the circulator's affidavit match the address where the circulator is registered to vote. Because the circuit court's ruling restored 20 signatures to Lucas' petition, the court ordered that Lucas' name be placed on the primary election ballot.

Lakin appealed from the circuit court's judgment and, after expedited review, the appellate court reversed the circuit court and affirmed the original decision of the Board. The appellate court expressly declined to follow *Whelan* and *Bass*, concluding that those opinions were too restrictive in their reading of the pertinent sections of the Election Code. The appellate court's mandate was issued along with its opinion on March 14, 1996. On Lucas' motion, this court stayed the appellate court's mandate pending consideration of Lucas' peti-

tion for leave to appeal. On March 19, 1996, the primary election took place. Lucas appeared on the ballot and lost the election.

## Analysis

We observe, at the outset, that while the primary election which is at the heart of this appeal has already been held, this cause is not moot. One exception to the mootness doctrine permits a court to resolve an otherwise moot issue if that issue concerns a substantial public interest. This public interest exception may be applied if (1) the question presented is of a public nature, (2) an authoritative resolution of the question is desirable for the purpose of guiding public officers, and (3) the question is likely to recur. *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 395 (1994). The instant appeal raises a question of election law which, inherently, is a matter of public concern. In addition, as noted above, the issue before us has created a split of authority in our appellate court. Resolution of the question presented in this appeal is therefore necessary, as the issue will likely arise again in future elections. Accordingly, we reach the merits in this cause.

The facts in this case are not in dispute. At some time prior to circulating the first sheet of Lucas' nominating petition, Wanagat moved from the Madison County address where he was registered to vote to another address located within Madison County. When he moved, Wanagat inadvertently failed to transfer his voter registration to his new address. Subsequently, when asked to provide his address in the circulator's affidavit at the bottom of the petition sheet he was circulating, Wanagat simply listed, without any intent to deceive or mislead, his new Madison County address. The sole issue which the parties contest is whether, under these facts, the relevant provisions of the Election Code require that the petition sheet which Wanagat circulated be declared invalid.

When construing the meaning of a disputed statute, this court's primary objective is to ascertain and give effect to the intent of the legislature. *People v. Zaremba,* 158 Ill. 2d 36, 40 (1994). Legislative intent is best determined by examining the statutory language, which must be given its plain and ordinary meaning. *People v. Tucker,* 167 Ill. 2d 431, 435 (1995). Because the construction of a statute is a question of law, our review is *de novo. Vuletich v. United States Steel Corp.,* 117 Ill. 2d 417, 421 (1987).

Section 7—10 of the Election Code sets out the requirements for nominating petitions filed on behalf of political parties in primary elections. The section states that the circulator's affidavit must appear in the following form:

> "At the bottom of each sheet of such petition shall be added a statement signed by a registered voter of the political division, who has been a registered voter at all times he or she circulated the petition, for which the candidate is seeking a nomination, stating the street address or rural route number of the voter, as the case may be, as well as the voter's city, village or town; and certifying that the signatures on that sheet of the petition were signed in his presence; [and indicating the dates the sheet was circulated]; and certifying that the signatures on the sheet are genuine, and certifying that to the best of his knowledge and belief the persons so signing were at the time of signing the petitions qualified voters of the political party for which a nomination is sought. Such statement shall be sworn to before some officer authorized to administer oaths in this State." 10 ILCS 5/7—10 (West 1994).

Lakin does not contest the Board's finding that Wanagat was registered to vote in Madison County at the time he circulated the petition, nor does he argue that Wanagat's failure to update his registration address, by itself, invalidated his status as a registered voter as a matter of law. It is also undisputed that sec-

tion 7—10 does not expressly require the address in the circulator's affidavit to match the address where the circulator is registered to vote. Lakin does not allege any other irregularities with respect to Wanagat's affidavit. Therefore, we conclude that Wanagat's affidavit was in compliance with the criteria set out in section 7—10.

Lakin contends, however, that in addition to being governed by section 7—10, Wanagat was also subject to the requirements of a definition section of the Election Code, section 3—1.2 (10 ILCS 5/3—1.2 (West 1994)). Under the terms of this section, Lakin argues, Wanagat was not a valid circulator of Lucas' nominating petition. Section 3—1.2 of the Election Code provides:

"§ 3—1.2. *For the purpose of determining eligibility to sign a nominating petition* or a petition proposing a public question the terms 'voter', 'registered voter', 'qualified voter', 'legal voter', 'elector', 'qualified elector', 'primary elector' and 'qualified primary elector' as used in this Code or in another Statute shall mean a person who is registered to vote at the address shown opposite his signature on the petition or was registered to vote at such address when he signed the petition." (Emphasis added.) 10 ILCS 5/3—1.2 (West 1994).

Lakin maintains that the phrase "[f]or the purpose of determining eligibility to sign a nominating petition" does not refer solely to those individuals whose signatures count toward the nominating petition's numerical signature requirement, but instead refers to all the individuals who physically sign the petition, including the circulator. From this, Lakin reasons that because the address in Wanagat's affidavit was different from his voter registration address, he was not a "registered voter" within the meaning of section 3—1.2. Lakin notes that section 7—10 requires circulators to be registered voters. Therefore, according to Lakin, Wanagat was not a valid circulator and the Board was correct in striking

the petition sheet from Lucas' nominating petition. We disagree.

To "sign" a nominating petition, in the plain and ordinary sense of the word, means to add one's signature to the nominating petition for the purpose of supporting the candidate whose name appears on the petition. See *Whelan*, 256 Ill. App. 3d at 559; *Bass*, 266 Ill. App. 3d at 1112-13. We believe the legislature had this commonly accepted meaning of the word "sign" in mind when it enacted section 3—1.2. To hold otherwise would strain the language of that section beyond its normal meaning. Section 3—1.2 speaks of eligibility to sign a nominating petition, not of eligibility to circulate one. By its own terms, section 3—1.2 does not govern the actions of petition circulators.

Our conclusion that the phrase "eligibility to sign a nominating petition" refers only to those individuals who sign the petition as a means of endorsing the listed candidate is supported by the remaining language of section 3—1.2 and by the language of section 7—10. Section 3—1.2 defines "registered voter" as "a person who is registered to vote at the address shown opposite his signature on the petition." This definitional language parallels the portion of section 7—10 describing the requirements which must be met by the individuals signing the nominating petition:

> "Such petition shall be signed by qualified primary electors residing in the political division for which the nominating is sought in their own proper persons only and *opposite the signature of each signer, his residence address shall be written or printed. The residence address required to be written or printed opposite* each qualified primary elector's name shall include the street address or rural route number of the signer, as the case may be, as well as the signer's city, village or town." (Emphasis added.) 10 ILCS 5/7—10 (West 1994).

The portion of section 7—10 which describes the requirements which petition circulators must meet

states that the circulators must provide their "street address or rural route number" and their "city, village or town," but makes no reference to the circulator's address appearing opposite his or her signature. Indeed, as the sample form provided in section 7—10 shows, the circulator's signature appears at the bottom of the petition sheet, underneath the address and other information contained within the circulator's affidavit. See 10 ILCS 5/7—10 (West 1994); see also T. Jaconetty & S. Ruffolo, *Ballot Access*, in Election Law § 1S.72 (Ill. Inst. for Cont. Legal Educ. Supp. 1995) (containing a complete sample nominating petition). Clearly, if the legislature had intended section 3—1.2 to apply to petition circulators, it would not have created a definition of "registered voter" which follows, narrowly and exclusively, the portion of the statutory language and sample form which applies only to the individuals who sign the nominating petition as a means of endorsing the listed candidate.

Lakin also maintains, as did the appellate court below, that his proposed construction of section 3—1.2 is necessary to effectuate the legislative intent behind that provision. Lakin notes that section 3—1.2 codified a 1983 appellate court decision, *Greene v. Board of Election Commissioners*, 112 Ill. App. 3d 862 (1983). In *Greene*, the appellate court determined that section 10—4 of the Election Code (Ill. Rev. Stat. 1981, ch. 46, par. 10—4) required a person who signs a nominating petition to be registered to vote at the address set forth on the nominating petition. The court noted that it would be difficult to verify that an individual is registered to vote, and is therefore qualified to sign the nominating petition, if that individual was registered to vote at an address other than the one shown on the petition. The court concluded that its holding was therefore necessary to facilitate the verification procedure and to preserve the integrity of the election process. *Greene*, 112 Ill. App. 3d at 869.

Analogizing to *Greene,* Lakin maintains that it is difficult to verify that a circulator has met the statutory requirement of being registered to vote when the circulator's voter registration address and the address given in the circulator's affidavit are not identical. Lakin asserts that, as in *Greene,* this difficulty provides a compelling justification for requiring that the address listed in the circulator's affidavit and the circulator's voter registration address match one another. Lakin concludes, therefore, that the legislature must have intended for section 3—1.2 to apply to circulators.

Contrary to Lakin's assertions, we do not believe that the need to facilitate the process of verifying the voter registration of petition circulators is necessarily as compelling as the need to facilitate the verification process for those who sign the nominating petition. First, unlike the individuals who sign the nominating petition to endorse the listed candidate, the circulator must make a sworn statement that he or she is a registered voter. Thus, the circulator is subject to an additional constraint which, by itself, helps ensure that the circulator is registered to vote. In addition, in any nominating petition, there are far fewer circulators than there are individuals signing that petition. Therefore, as a practical matter, verifying the registration of circulators is less burdensome than verifying the registration of the individuals who sign the nominating petition. These factors, in conjunction with the plain language of the statute, provide the basis for concluding that the legislature intended to limit the reach of section 3—1.2 to individuals who sign a nominating petition in support of the listed candidate.

As the instant appeal demonstrates, Lakin's interpretation of section 3—1.2 imposes a potentially harsh result upon the individuals who sign the nominating petition. Under Lakin's proposed construction, a registered

circulator's inadvertent failure to update his or her voter registration address may cancel the otherwise valid signatures of the voters who sign the petition sheet, thereby nullifying those voters' right to endorse the candidate of their choice. See *Bass*, 266 Ill. App. 3d at 1113. We are mindful of the need to tread cautiously when construing statutory language which restricts the people's right to endorse and nominate the candidate of their choice. See, *e.g.*, *Tully v. Edgar*, 171 Ill. 2d 297, 307 (1996) (legislation which limits the people's right to nominate candidates implicates the fundamental right to vote). Accordingly, in the absence of a clear legislative statement to the contrary, we hold that the Election Code does not require that the address in the circulator's affidavit on a nominating petition filed pursuant to section 7—10 be identical to the address where the circulator is registered to vote.

For the foregoing reasons we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*