NOTICE: Under Supreme Court Rule 367 a party has 21 days after the filing of the opinion

to request a rehearing. Also, opinions are subject to modification, correction or withdrawal at

anytime prior to issuance of the mandate by the Clerk of the Court. Therefore, because the

following slip opinion is being made available prior to the Court's final action in this matter,

it cannot be considered the final decision of the Court. The official copy of the following

opinion will be published by the Supreme Court's Reporter of Decisions in the Official

Reports advance sheets following final action by the Court.

                                    

              Docket No. 80719--Agenda 31--September 1996.

       RONALD "RINK" LUCAS, Appellant, v. L. THOMAS LAKIN et al.,

                               Appellees.

                     Opinion filed January 30, 1997.

                                    

     JUSTICE McMORROW delivered the opinion of the court:

     The question presented in this appeal is whether an individual

sheet of a nominating petition which is filed pursuant to section

7--10 of the Election Code (10 ILCS 5/7--10 (West 1994)) is

rendered invalid if the address set forth within the circulator's

affidavit at the bottom of the petition sheet does not match the

address where the circulator of the sheet is registered to vote.

The fifth district of the appellate court answered this question

affirmatively. 278 Ill. App. 3d 163. We granted leave to appeal

(155 Ill. 2d R. 315) and now reverse the judgment of the appellate

court.

                                Background

     On December 11, 1995, Ronald P. "Rink" Lucas (Lucas) filed a

nominating petition seeking to have his name placed on the ballot

for the March 19, 1996, Democratic primary for the office of

Madison County recorder. The nominating petition consisted of 20

individual sheets containing a total of 330 signatures. Two hundred

fifty-five valid signatures were required to secure a position on

the primary election ballot.

     On December 22, 1995, L. Thomas Lakin (Lakin) filed an

objector's petition (see 10 ILCS 5/10--8 (West 1994)) in which he

contested the validity of numerous signatures on Lucas' nominating

petition and asserted that there was an insufficient number of

valid signatures remaining on the petition to warrant placing

Lucas' name on the primary election ballot. In the portion of the

objector's petition relevant here, Lakin alleged that the

circulator of the first sheet of Lucas' nominating petition, Aaron

Wanagat (Wanagat), was not registered to vote at the address listed

in the circulator's affidavit on that sheet. Thus, according to

Lakin, Wanagat was not a valid circulator and the sheet, which

contained 20 signatures, had to be stricken in its entirety.

     On January 9, 1996, the Madison County officers electoral

board (the Board) held a hearing pursuant to section 10--9 of the

Election Code (10 ILCS 5/10--9 (West 1994)) to consider Lakin's

objections. In a written decision issued on January 11, 1996, the

Board found, inter alia, that Wanagat was a registered voter of

Madison County. However, the Board also found that Wanagat was

registered to vote at an address other than the one listed in the

circulator's affidavit on the petition sheet. The Board ruled that

Wanagat was therefore not a valid circulator and that the first

sheet of Lucas' nominating petition was void. As a result of this

ruling, and others made by the Board, Lucas' nominating petition

had only 244 valid signatures--11 short of the 255 required.

Accordingly, the Board ordered that Lucas' name not appear on the

ballot for the primary election.

     Lucas sought judicial review of the Board's decision in the

circuit court of Madison County. See 10 ILCS 5/10--10.1 (West

1994). Following a hearing held on February 2, 1996, the circuit

court entered judgment reversing the Board's decision regarding the

validity of the first petition sheet. The circuit court based its

judgment on two appellate court decisions, Bass v. Hamblet, 266

Ill. App. 3d 1110 (1st Dist. 1994), and Whelan v. County Officers'

Electoral Board, 256 Ill. App. 3d 555 (2d Dist. 1994). Both of

these decisions held that the relevant provisions of the Election

Code do not require that the address in the circulator's affidavit

match the address where the circulator is registered to vote.

Because the circuit court's ruling restored 20 signatures to Lucas'

petition, the court ordered that Lucas' name be placed on the

primary election ballot.

     Lakin appealed from the circuit court's judgment and, after

expedited review, the appellate court reversed the circuit court

and affirmed the original decision of the Board. The appellate

court expressly declined to follow Whelan and Bass, concluding that

those opinions were too restrictive in their reading of the

pertinent sections of the Election Code. The appellate court's

mandate was issued along with its opinion on March 14, 1996. On

Lucas' motion, this court stayed the appellate court's mandate

pending consideration of Lucas' petition for leave to appeal. On

March 19, 1996, the primary election took place. Lucas appeared on

the ballot and lost the election.

                                 Analysis

     We observe, at the outset, that while the primary election

which is at the heart of this appeal has already been held, this

cause is not moot. One exception to the mootness doctrine permits

a court to resolve an otherwise moot issue if that issue concerns

a substantial public interest. This public interest exception may

be applied if (1) the question presented is of a public nature, (2)

an authoritative resolution of the question is desirable for the

purpose of guiding public officers, and (3) the question is likely

to recur. Bonaguro v. County Officers Electoral Board, 158 Ill. 2d

391, 395 (1994). The instant appeal raises a question of election

law which, inherently, is a matter of public concern. In addition,

as noted above, the issue before us has created a split of

authority in our appellate court. Resolution of the question

presented in this appeal is therefore necessary, as the issue will

likely arise again in future elections. Accordingly, we reach the

merits in this cause.

     The facts in this case are not in dispute. At some time prior

to circulating the first sheet of Lucas' nominating petition,

Wanagat moved from the Madison County address where he was

registered to vote to another address located within Madison

County. When he moved, Wanagat inadvertently failed to transfer his

voter registration to his new address. Subsequently, when asked to

provide his address in the circulator's affidavit at the bottom of

the petition sheet he was circulating, Wanagat simply listed,

without any intent to deceive or mislead, his new Madison County

address. The sole issue which the parties contest is whether, under

these facts, the relevant provisions of the Election Code require

that the petition sheet which Wanagat circulated be declared

invalid.

     When construing the meaning of a disputed statute, this

court's primary objective is to ascertain and give effect to the

intent of the legislature. People v. Zaremba, 158 Ill. 2d 36, 40

(1994). Legislative intent is best determined by examining the

statutory language, which must be given its plain and ordinary

meaning. People v. Tucker, 167 Ill. 2d 431, 435 (1995). Because the

construction of a statute is a question of law, our review is de

novo. Vuletich v. United States Steel Corp., 117 Ill. 2d 417, 421

(1987).

     Section 7--10 of the Election Code sets out the requirements

for nominating petitions filed on behalf of political parties in

primary elections. The section states that the circulator's

affidavit must appear in the following form:

          "At the bottom of each sheet of such petition shall be

          added a statement signed by a registered voter of the

          political division, who has been a registered voter at

          all times he or she circulated the petition, for which

          the candidate is seeking a nomination, stating the street

          address or rural route number of the voter, as the case

          may be, as well as the voter's city, village or town; and

          certifying that the signatures on that sheet of the

          petition were signed in his presence; [and indicating the

          dates the sheet was circulated]; and certifying that the

          signatures on the sheet are genuine, and certifying that

          to the best of his knowledge and belief the persons so

          signing were at the time of signing the petitions

          qualified voters of the political party for which a

          nomination is sought. Such statement shall be sworn to

          before some officer authorized to administer oaths in

          this State." 10 ILCS 5/7--10 (West 1994).

     Lakin does not contest the Board's finding that Wanagat was

registered to vote in Madison County at the time he circulated the

petition, nor does he argue that Wanagat's failure to update his

registration address, by itself, invalidated his status as a

registered voter as a matter of law. It is also undisputed that

section 7--10 does not expressly require the address in the

circulator's affidavit to match the address where the circulator is

registered to vote. Lakin does not allege any other irregularities

with respect to Wanagat's affidavit. Therefore, we conclude that

Wanagat's affidavit was in compliance with the criteria set out in

section 7--10.

     Lakin contends, however, that in addition to being governed by

section 7--10, Wanagat was also subject to the requirements of a

definition section of the Election Code, section 3--1.2 (10 ILCS

5/3--1.2 (West 1994)). Under the terms of this section, Lakin

argues, Wanagat was not a valid circulator of Lucas' nominating

petition. Section 3--1.2 of the Election Code provides:

               "§3--1.2. For the purpose of determining eligibility

          to sign a nominating petition or a petition proposing a

          public question the terms `voter', `registered voter',

          `qualified voter', `legal voter', `elector', `qualified

          elector', `primary elector' and `qualified primary

          elector' as used in this Code or in another Statute shall

          mean a person who is registered to vote at the address

          shown opposite his signature on the petition or was

          registered to vote at such address when he signed the

          petition." (Emphasis added.) 10 ILCS 5/3--1.2 (West

          1994).

     Lakin maintains that the phrase "[f]or the purpose of

determining eligibility to sign a nominating petition" does not

refer solely to those individuals whose signatures count toward the

nominating petition's numerical signature requirement, but instead

refers to all the individuals who physically sign the petition,

including the circulator. From this, Lakin reasons that because the

address in Wanagat's affidavit was different from his voter

registration address, he was not a "registered voter" within the

meaning of section 3--1.2. Lakin notes that section 7--10 requires

circulators to be registered voters. Therefore, according to Lakin,

Wanagat was not a valid circulator and the Board was correct in

striking the petition sheet from Lucas' nominating petition. We

disagree.

     To "sign" a nominating petition, in the plain and ordinary

sense of the word, means to add one's signature to the nominating

petition for the purpose of supporting the candidate whose name

appears on the petition. See Whelan, 256 Ill. App. 3d at 559; Bass,

266 Ill. App. 3d at 1112--13. We believe the legislature had this

commonly accepted meaning of the word "sign" in mind when it

enacted section 3--1.2. To hold otherwise would strain the language

of that section beyond its normal meaning. Section 3--1.2 speaks of

eligibility to sign a nominating petition, not of eligibility to

circulate one. By its own terms, section 3--1.2 does not govern the

actions of petition circulators.

     Our conclusion that the phrase "eligibility to sign a

nominating petition" refers only to those individuals who sign the

petition as a means of endorsing the listed candidate is supported

by the remaining language of section 3--1.2 and by the language of

section 7--10. Section 3--1.2 defines "registered voter" as "a

person who is registered to vote at the address shown opposite his

signature on the petition." This definitional language parallels

the portion of section 7--10 describing the requirements which must

be met by the individuals signing the nominating petition:

               "Such petition shall be signed by qualified primary

          electors residing in the political division for which the

          nominating is sought in their own proper persons only and

          opposite the signature of each signer, his residence

          address shall be written or printed. The residence

          address required to be written or printed opposite each

          qualified primary elector's name shall include the street

          address or rural route number of the signer, as the case

          may be, as well as the signer's city, village or town."

          (Emphasis added.) 10 ILCS 5/7--10 (West 1994).

     The portion of section 7--10 which describes the requirements

which petition circulators must meet states that the circulators

must provide their "street address or rural route number" and their

"city, village or town," but makes no reference to the circulator's

address appearing opposite his or her signature. Indeed, as the

sample form provided in section 7--10 shows, the circulator's

signature appears at the bottom of the petition sheet, underneath

the address and other information contained within the circulator's

affidavit. See 10 ILCS 5/7--10 (West 1994); see also T. Jaconetty

& S. Ruffolo, Ballot Access, in Election Law §1S.72 (Ill. Inst. for

Cont. Legal Educ. Supp. 1995) (containing a complete sample

nominating petition). Clearly, if the legislature had intended

section 3--1.2 to apply to petition circulators, it would not have

created a definition of "registered voter" which follows, narrowly

and exclusively, the portion of the statutory language and sample

form which applies only to the individuals who sign the nominating

petition as a means of endorsing the listed candidate.

     Lakin also maintains, as did the appellate court below, that

his proposed construction of section 3--1.2 is necessary to

effectuate the legislative intent behind that provision. Lakin

notes that section 3--1.2 codified a 1983 appellate court decision,

Greene v. Board of Election Commissioners, 112 Ill. App. 3d 862

(1983). In Greene, the appellate court determined that section 10--

4 of the Election Code (Ill. Rev. Stat. 1981, ch. 46, par. 10--4)

required a person who signs a nominating petition to be registered

to vote at the address set forth on the nominating petition. The

court noted that it would be difficult to verify that an individual

is registered to vote, and is therefore qualified to sign the

nominating petition, if that individual was registered to vote at

an address other than the one shown on the petition. The court

concluded that its holding was therefore necessary to facilitate

the verification procedure and to preserve the integrity of the

election process. Greene, 112 Ill. App. 3d at 869.

     Analogizing to Greene, Lakin maintains that it is difficult to

verify that a circulator has met the statutory requirement of being

registered to vote when the circulator's voter registration address

and the address given in the circulator's affidavit are not

identical. Lakin asserts that, as in Greene, this difficulty

provides a compelling justification for requiring that the address

listed in the circulator's affidavit and the circulator's voter

registration address match one another. Lakin concludes, therefore,

that the legislature must have intended for section 3--1.2 to apply

to circulators.

     Contrary to Lakin's assertions, we do not believe that the

need to facilitate the process of verifying the voter registration

of petition circulators is necessarily as compelling as the need to

facilitate the verification process for those who sign the

nominating petition. First, unlike the individuals who sign the

nominating petition to endorse the listed candidate, the circulator

must make a sworn statement that he or she is a registered voter.

Thus, the circulator is subject to an additional constraint which,

by itself, helps ensure that the circulator is registered to vote.

In addition, in any nominating petition, there are far fewer

circulators than there are individuals signing that petition.

Therefore, as a practical matter, verifying the registration of

circulators is less burdensome than verifying the registration of

the individuals who sign the nominating petition. These factors, in

conjunction with the plain language of the statute, provide the

basis for concluding that the legislature intended to limit the

reach of section 3--1.2 to individuals who sign a nominating

petition in support of the listed candidate.

     As the instant appeal demonstrates, Lakin's interpretation of

section 3--1.2 imposes a potentially harsh result upon the

individuals who sign the nominating petition. Under Lakin's

proposed construction, a registered circulator's inadvertent

failure to update his or her voter registration address may cancel

the otherwise valid signatures of the voters who sign the petition

sheet, thereby nullifying those voters' right to endorse the

candidate of their choice. See Bass, 266 Ill. App. 3d at 1113. We

are mindful of the need to tread cautiously when construing

statutory language which restricts the people's right to endorse

and nominate the candidate of their choice. See, e.g., Tully v.

Edgar, 171 Ill. 2d 297, 307 (1996) (legislation which limits the

people's right to nominate candidates implicates the fundamental

right to vote). Accordingly, in the absence of a clear legislative

statement to the contrary, we hold that the Election Code does not

require that the address in the circulator's affidavit on a

nominating petition filed pursuant to section 7--10 be identical to

the address where the circulator is registered to vote.

     For the foregoing reasons we reverse the judgment of the

appellate court and affirm the judgment of the circuit court.

Appellate court judgment reversed;

                                           circuit court judgment affirmed.