SIXTH DIVISION
 March 15, 2002

No. 1-02-0576

WILLIAM LOCKHART and RALPH BELLAMY,

 Petitioners-Appellants,

 v.

COOK COUNTY OFFICERS ELECTORAL BOARD, and its members DANIEL MADDEN, THOMAS
V. LYONS, and BERNADETTE FREEMAN, as designees for DAVID D. ORR, Cook
County Clerk, RICHARD A. DEVINE, Cook County State's Attorney, and DOROTHY
BROWN, Clerk of the Circuit Court, and STEVEN BURRIS,

 Respondents-Appellees. | | | | | |
)
)
)
)
)
)
)
)
)
)
)
)
)
)
 |Appeal from the
Circuit Court of
Cook County

Honorable
Marsha Hayes,
Judge Presiding.
 JUSTICE O'MARA FROSSARD delivered the opinion of the court:
 Petitioners William Lockhart and Ralph Bellamy appeal the trial
court's judgment affirming the decision of the Cook County Officers
Electoral Board (Electoral Board) finding that the nomination papers of
respondent Steven Burris, a candidate for the office of Member of the Cook
County Board of Review (Board of Review), were valid and contained a
sufficient number of signatures to warrant inclusion of his name on the
ballot for the March 19, 2002 general primary election. Petitioners
contend on appeal that Burris' name must be removed from the ballot because
the Electoral Board erroneously applied section 7-10(c) of the Election
Code (10 ILCS 5/7-10(c) (West 2000)) to determine the minimum number of
signatures required and thus improperly concluded that Burris' nomination
papers contained a sufficient number of signatures.
 Burris filed nomination papers with the Cook County Clerk (Clerk) to
be a Democratic candidate in the March 19, 2002 general primary election
for the office of Member of the Board of Review, Third Board of Review
Member District. Petitioners filed a petition objecting to those
nomination papers, alleging that the required number of valid signatures
was 7,120, and that Burris' papers contained fewer than 7,120 valid
signatures. Burris filed a motion to strike and dismiss the petition,
alleging that pursuant to section 7-10(c) of the Election Code (10 ILCS 5/7-
10(c) (West 2000)), the required number of valid signatures was one-third
of 7,120 or 2,374.
 On February 4, 2002, the Electoral Board conducted a hearing on
Burris' motion. Burris introduced a copy of the Clerk's 2002 Election
Calendar, which lists various county offices and the number of signatures
that candidates for those offices must obtain in order to have their names
placed on the ballot. The Election Calendar states that Democratic
candidates for the countywide offices of County Clerk, Treasurer, Sheriff,
Assessor, and President-County Board, must obtain 7,120 signatures.
However, unlike the signature requirement of 7,120 listed next to the other
countywide offices, the 7,120 figure next to the Board of Review is
followed by an asterisk indicating:
 "Neither the Revenue Act nor the Election Code contains a
 specific method for calculating a minimum signature requirement
 for Board of Review, and no method of calculating the signature
 requirement has been subjected to judicial scrutiny.
 Prospective candidates are advised to consult legal counsel."
 The Electoral Board noted that the registration records summary
indicated that Burris had approximately 4,769 valid signatures and, on its
own motion, adopted this figure as the number of valid signatures obtained
by Burris. At the conclusion of the hearing, Chairman Daniel Madden, the
Clerk's representative on the Electoral Board, found that the final
sentence of section 7-10(c) of the Election Code (10 ILCS 5/7-10 (West
2000)) provided the appropriate formula for determining the number of
signatures that Burris was required to obtain. In applying this formula,
Madden divided 7,120, the number of required signatures for those seeking
countywide offices in the 2002 Democratic primary, by 3, the number of
Board of Review districts in Cook County, to find that Burris was required
to obtain 2,374 signatures. In support of this finding, Madden noted that
there is a "strong public policy" in the Election Code in favor of having
smaller signature requirements for offices that run within a district of a
larger unit than for offices which run in the entire unit. Madden further
noted that the legislation creating the three-member district Board of
Review did not address this policy, and that nothing in the statutes
indicated that in terms of signature requirements a Board of Review
candidate who runs in a district one-third the size of the county should be
treated as if he were running for a countywide position such as Assessor,
Sheriff, or County Clerk. Madden additionally stated that due to the need
for expedition, the Electoral Board's written decision would not recite its
analysis in full, but would instead rely upon the analysis in the hearing
transcript.
 Petitioners filed a petition for judicial review of the Electoral
Board's decision in the circuit court pursuant to section 10-10.1 of the
Election Code (10 ILCS 5/10-10.1 (West 2000)). Following a hearing on the
petition, the trial court affirmed the Electoral Board's decision to keep
Burris' name on the ballot.
 Petitioners contend on appeal that the trial court erred by finding
that the Electoral Board properly applied section 7-10(c) of the Election
Code to determine the number of signatures Burris was required to obtain in
order to have his name placed on the ballot as a candidate for the Board of
Review. Initially, we note that we are required to review the Electoral
Board's decision rather than the trial court's decision. Calabrese v.
Chicago Park District, 294 Ill. App. 3d 1055, 1065 (1998). Petitioners
argue that the Electoral Board failed to set forth in writing findings in
support of its decision as required by section 10-10 of the Election Code.
10 ILCS 5/10-10 (West 2000)). We note, however, that the record contains a
four page written decision which references the hearing record containing
the findings made by the Electoral Board at the conclusion of the hearing.
We reject petitioner's argument that the decision of the Electoral Board
was deficient for failure to articulate written findings. Based on the
totality of the circumstances, including the complete record, the findings
of the Electoral Board were sufficient for purposes of our review.
 The issue before us turns on the interpretation of a statute,
therefore it is a question of law subject to de novo review. Zapolsky v.
Cook County Officers Electorial Board, 296 Ill. App. 3d 731, 733 (1998).
Subsections (a) through (k) of section 7-10 of the Election Code list
various categories of elective offices as well as specific offices and set
forth the requisite number of signatures or method for determining that
number which candidates running for those offices must obtain on their
petitions for nomination. 10 ILCS 5/7-10(a)-(k) (West 2000). Section 7-
10(c) addresses the number of signatures which candidates for county
offices must obtain on their petitions for nominations. Section 7-10(c)
provides in pertinent part as follows:
 "Such petitions for nominations shall be signed:
 ***
 (c) If for a county office (including county board member
 and chairman of the county board where elected from the
 county at large), by at least .5% of the qualified electors
 of his party cast at the last preceding general election in
 his county." (Emphasis added) 10 ILCS 5/7-10(c) (West
 2000).
However, the final sentence of section 7-10(c) states:
 "In the case of an election for county board member to be
 elected from a district, for the first primary following a
 redistricting of county board districts or the initial
 establishment of county board districts, then by at least .5% of
 the qualified electors of his party in the entire county at the
 last preceding general election, divided by the number of county
 board districts, but in any event not less than 25 qualified
 primary electors of his party in the district." (Emphasis
 added) 10 ILCS 5/7-10(c) (West 2000).
 Petitioners contend that the legislature did not expressly articulate
in the Election Code the method for calculating the number of signatures
needed for nomination papers for the Board of Review, but instead delegated
to the Clerk the authority for establishing this method. Petitioners
further contend that the Clerk exercised that authority to interpret
section 7-10(c) of the Election Code and properly concluded that membership
on the Board of Review was a "county office" other than "county board
member." Thus, petitioners argue, the requisite number of signatures
Burris was required to obtain was at least .5% of the votes cast by
Democratic electors in the last general election or 7,120, the number
included in the Clerk's 2002 Election Calendar.
 Respondents contend, on the other hand, that under section 7-10(c)
"an election for county board member to be elected from a district"
includes an election for the office of Member of the Board of Review.
Thus, according to respondents, the signature calculation method included
in the final sentence of section 7-10(c) of the Election Code applied.
This method required Burris to obtain a number of signatures equal to "at
least .5% of the qualified electors of his party in the entire county at
the last preceding general election, divided by the number of county board
districts."
 The County of Cook is divided into three Board of Review Districts
and the General Assembly redrew these districts following the 2000 census.
P.A. 92-462, 10 ILCS 106/1 et seq. The issue is whether under 7-10(c) of
the Election Code the number of signatures Burris was required to obtain in
order to have his name placed on the ballot as a candidate for the office
of the Board of Review in a redistricting year was the number of signatures
required for countywide candidates, divided by the number of county board
districts, here, three. Here, the Clerk expressly advised prospective
candidates for the Board of Review in its Election Calendar to consult
legal counsel regarding the signature requirement since it had not been
subjected to judicial scrutiny.
 Petitioners contend that membership on the Board of Review is a
"county office" and not membership on a "county board." In support of this
contention, they argue that the language of section 7-10(c) is ambiguous,
that the Election Code does not define "county board member," and that the
definitions of "county board" and "local assessment officers" contained in
the Property Tax Code (35 ILCS 200/1-35, 1-85 (West 2000)), which includes
the enabling legislation for the Board of Review (35 ILCS 200/6-5 to 6-55
(West 2000)), are controlling.
 When construing a statute, our primary goal is to determine and give
effect to the intent of the legislature. Whelan v. County Officers'
Electoral Board of Du Page County, 256 Ill. App. 3d 555, 558 (1994).
Inquiries into legislative intent begin with the language of the statute,
which is "the most reliable indicator of the legislature's objectives in
enacting a particular law." Michigan Avenue National Bank, 191 Ill. 2d at
504. We must give statutory language its plain and ordinary meaning, and
when the language is clear and unambiguous, we must apply the statute
without resorting to additional aids of statutory construction. Michigan
Avenue National Bank v. County of Cook, 191 Ill. 2d 493, 504 (2000). When
construing a statute, we may consider "the reason and necessity for the
statute and the evils it was intended to remedy," In re Marriage of Beyer
and Parkis, 324 Ill. App. 3d 305, 309 (2001), and we presume the
legislature did not intend absurdity or injustice. Michigan Avenue
National Bank, 191 Ill. 2d at 504.
 Applying the above principles to the instant case, we find that the
language of section 7-10(c) of the Election Code is not ambiguous and
conclude that an election for "county board member to be elected from a
district" includes an election for membership on the Board of Review. The
first sentence of the section 7-10(c) requires those running for county
office (including county board member and chairman of the county board
where elected from the county at large) to obtain a number of signatures on
their petitions equal to at least ".5% of the qualified electors of his
party cast at the last preceding general election in his county." The
final sentence of the section requires those running for county board
member to be elected from a district, for the first primary following a
redistricting of county board districts, to obtain at least ".5% of the
qualified electors of his party in the entire county at the last preceding
general election, divided by the number of county board districts."
 Here, Burris is running for membership on the Board of Review, a
county board, and is to be elected by voters within a district, rather than
by voters within the entire county, in the first primary following a
redistricting of county board districts. Accordingly, we find that the
method for calculating the requisite number of signatures contained in the
final sentence of section 7-10(c) is applicable in the instant case. We
affirm the Electoral Board's finding, pursuant to that method of
calculation, that Burris was required to obtain at least 2,374 valid
signatures. Burris obtained in excess of 2,374 valid signatures.
Therefore, we hold that the nomination papers of Burris contained a
sufficient number of signatures and that his name shall not be stricken
from the ballot for the March 19, 2002 general primary election.
 "The primary purpose of the signature requirement is to reduce the
electoral process to manageable proportions by confining ballot positions
to a relatively small number of candidates who have demonstrated initiative
and at least a minimal appeal to eligible voters." Merz, 94 Ill. App. 3d
at 1118 . Our holding today is consistent with that purpose. Burris is
not to be elected from the county at large, but rather from the specific
district in which he is running. Construing section 7-10(c) to require him
to obtain the same number of signatures as those running for offices which
are elected by the entire county would not only unfairly penalize Burris,
but would also compromise the right of the voters in Burris' district to
cast their votes effectively. See Merz, 94 Ill. App. 3d at 1118
(recognizing the right of voters to cast their votes effectively).
 For the foregoing reasons, we affirm the judgment of the circuit
court.
 Affirmed.
 GALLAGHER, P.J., and O'BRIEN, J., concur.