2015 IL App (1st) 150685

No. 1-15-0685

Opinion filed March 27, 2015

Third Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

McSTEPHEN O.A. "MAX" SOLOMON,                )
                                             )
    Plaintiff-Appellant,                     )
                                             )    Appeal from the Circuit Court
v.                                           )    of Cook County.
                                             )
MICHAEL SCHOLEFIELD, Objector,               )
EDUCATION OFFICERS ELECTORAL                 )    No. 15 COEL 37
BOARD, South Suburban Community College of   )
Cook County, FRANK M. ZUCCARELLI,            )
ANOTHONY DEFILIPPO, and TERRY WELLS,         )    The Honorable
in Their Individual Capacities as Members,   )    Maureen Ward Kirby,
                                             )    Judge presiding.
    Defendants-Appellees.                    )
                                             )
                                             )

JUSTICE MASON delivered the judgment of the court, with opinion.
Justices Lavin and Hyman concurred in the judgment and opinion.

**OPINION**

¶ 1      Petitioner-appellant, McStephen O.A. "Max" Solomon, appeals an order of the circuit court of Cook County affirming a decision of the Education Officers Electoral Board (Board) invalidating Solomon's nominating papers for the office of trustee of the board of South Suburban Community College of Cook County District 510 (District 510) and removing him from the ballot. The Board invalidated Solomon's petition on two grounds: first, it determined that Solomon was not "qualified for the office" within the meaning of section 10-5 of the

Election Code (10 ILCS 5/10-5 (West 2012)) (Code); and, second, the Board concluded that the failure of certain circulators to personally appear before the notary public who notarized their signatures on the petition sheets constituted a "pattern of fraud" that required invalidation of all the sheets supporting the petition as well as Solomon's statement of candidacy. We reverse.

¶ 2                                                        BACKGROUND

¶ 3          On December 15, 2014, Solomon filed nomination papers for the office of trustee of District 510, a position on the ballot for the April 7, 2015 consolidated election. Solomon's papers included a statement of candidacy representing that he was "legally qualified to hold such office" and nine pages of supporting signatures, seven of which were signed by Solomon as the circulator and two that were signed by other individuals. The signatures of the circulators on each petition sheet were notarized by a notary public, Maria Barlow, who swore that the circulators appeared before her on December 15, 2014, and affixed their signatures to the petition sheets.

¶ 4          Objector Michael Scholefield filed his objections to Solomon's petition on December 30, 2014. The bases for Scholefield's objections were that (i) Solomon's statement of candidacy was false because at the time he signed it, Solomon was receiving compensation from District 510, which meant that his service as a trustee would not be "without compensation" as required under section 3-7(e) of the Public Community College Act (110 ILCS 805/3-7(e) (West 2012)) and (ii) circulators of Solomon's petition sheets did not personally appear before the notary who notarized their signatures, demonstrating a pattern of fraud and disregard of the Code. Scholefield also raised line-by-line objections to the 119 signatures on the petition sheets. (A records examination later determined that 78 of those signatures were presumptively valid—28

more than the minimum 50 signatures required. No issue is raised on appeal regarding Solomon's compliance with the valid signature requirement.)

¶ 5        The Board conducted a hearing on Scholefield's objections. Solomon is an attorney and an adjunct professor who teaches part-time at South Suburban College and who lives in Hazel Crest within District 510's boundaries. He taught and received compensation for the fall 2014 semester and is currently teaching classes during the spring semester. Solomon is also a member of the South Suburban College Adjunct Faculty Association, a union comprised of adjunct faculty at the college.

¶ 6        Solomon personally circulated and signed seven of the nine sheets containing signatures supporting his nomination. Two other individuals, Anthony Brown and Gytara Brooks, each circulated and signed one sheet. Barlow is an attorney, a notary public and Solomon's girlfriend. Barlow lives in Chicago and she and Solomon have a law office at 1718 E. 89th Street in Chicago. Solomon signed and Barlow notarized his signature on the petition sheets circulated by him sometime after midnight on December 15 while Solomon and Barlow were at Barlow's residence in Chicago. According to Solomon, the sheets circulated by Brooks and Brown were notarized the day before—Sunday, December 14—at the office. But those two petition sheets likewise bear a notarization date of December 15. Solomon was asked, "And when [Barlow] notarized the petition sheets of Mr. Brown and Ms. Brooks, it's fair to say they were not present, correct?" Solomon replied, "They were because they were notarized the day before at the office." Solomon admitted that Brown and Brooks did not come to Barlow's house in the early morning hours of December 15.

¶ 7        Following this testimony, counsel for Scholefield informed the Board that he was "gravely concerned" about proceeding with the hearing and that he interpreted Solomon's

testimony as conceding that Barlow notarized the signatures of circulators who were not physically present. Counsel for the Board informed Solomon that "we have an obligation to seriously consider whether or not we should file a complaint with the Attorney Registration and Disciplinary Commission" and urged Solomon not to say anything further, informing him of his "right to remain silent."

¶ 8         Despite this dire admonition, Solomon proceeded to explain that he arranged for both Brown and Brooks to come to the law office on Sunday, December 14, so that Barlow could notarize their signatures. Solomon did not recall whether he was present in the office at the time, but had no reason to believe that Brown and Brooks had not personally appeared before Barlow to have their signatures on the petitions notarized. Solomon conceded that the date Barlow placed on each sheet was incorrect, but argued that such a mistake would not invalidate the notary's certification that the signer appeared before her or affect the validity of his nominating papers.

¶ 9         After Solomon's testimony, Scholefield rested. In colloquy with the Board, counsel for Scholefield stated his belief that Solomon had admitted that Brown and Brooks were not present on December 15 when Barlow notarized their signatures and that this evidence satisfied his burden of proof regarding the allegation of fraud. With respect to Solomon's eligibility for office, counsel for the Board clarified that the allegation related to compensation received by Solomon as an adjunct professor and Scholefield rested with respect to that objection as well.

¶ 10        Solomon then called Barlow to testify. Barlow attested that Solomon personally appeared before her to sign the sheets he circulated, although at one point she stated Solomon's sheets were notarized in the office and not at her residence. She could not recall whether she affixed her notary seal to Solomon's sheets before or after midnight on December 14. She

further testified that Brown and Brooks came to her office on the "weekend" and, after she checked both individuals' identification, both signed their sheets in her presence. On cross-examination, Scholefield's counsel asked Barlow whether Brown and Brooks "spent any time" with her on Monday, December 15 and Barlow reiterated her recollection that they came to the office on the "weekend." No further evidence was presented at the hearing. Specifically, Barlow was not asked, either by Solomon or by counsel for Scholefield, whether the date of her notarization on Brooks' and Brown's signatures was correct.

¶ 11        On March 4, 2015, the Board issued its decision invalidating Solomon's nomination papers and removing his name from the ballot. The Board found that the compensation Solomon received as an adjunct faculty member violated section 3-7(e) of the Public Community College Act, which provides, with respect to board members:

> "Members of the board shall serve without compensation but shall be reimbursed for their reasonable expenses incurred in connection with their service as members. Compensation, for purposes of this Section, means any salary or other benefits not expressly authorized by this Act to be provided or paid to, for or on behalf of members of the board." 110 ILCS 805/3-7(e) (West 2012).

The Board reasoned that the "compensation" referred to in section 3-7(e) was not "limited to that earned specifically as a Member of the Board" and that because Solomon received compensation from District 510 in his capacity as an adjunct professor, he was not qualified for the office of trustee. The Board further determined that Solomon's position as an adjunct faculty member potentially conflicted with his duties as a member of District 510's board since it was conceivable that as a member of District 510's board, he could be called on to pass on matters

relating to salary or other benefits for adjunct faculty. For this additional reason, the Board determined that Solomon was not qualified for the position.

¶ 12     Separately, the Board determined that the evidence adduced at the hearing supported the finding that the circulators other than Solomon did not appear before Barlow at the time she notarized their signatures. Specifically, the Board found that Solomon "admitted that the petition sheets of Brooks and Brown were not properly notarized because they never personally appeared before Barlow, the notary public." This admission, according to the Board, constituted a "total disregard for the mandatory requirements of the Election Code," which required invalidation not only of the sheets circulated by Brooks and Brown, but also of any other documents notarized by Barlow, including the sheets circulated by Solomon and his statement of candidacy. Based on its findings, the Board invalidated Solomon's nominating papers and ordered that his name be stricken from the ballot.

¶ 13     Solomon timely sought review of the Board's decision in the circuit court and on March 17, 2015, the circuit court affirmed the Board decision. Solomon filed his notice of appeal on March 18, 2015, and we granted his motion to accelerate this appeal and to accept memoranda in lieu of formal briefs.

¶ 14                                        ANALYSIS

¶ 15     Electoral boards are considered to be administrative agencies. *Jackson v. Board of Election Commissioners,* 2012 IL 111928, ¶ 46; *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 209 (2008). Under section 10-10.1 of the Code, a candidate or objector aggrieved by the final decision of an electoral board may obtain judicial review of the board's decision in the circuit court. 10 ILCS 5/10-10.1 (West 2012). Although the Code does not specifically adopt the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2012)),

the standards governing judicial review of a final decision of an election board are substantially the same as those governing review of other agency decisions. *Cinkus*, 228 Ill. 2d at 209. In particular, the standards of review for questions of fact, questions of law and mixed questions of fact and law are the same. As we recently reiterated in *Cunningham v. Schaeflein*:

"This court deems an electoral board's findings and conclusions on questions of fact to be *prima facie* true and correct, and we will not overturn such findings on appeal unless they are against the manifest weight of the evidence. [Citations.] A determination is against the manifest weight of the evidence when the opposite conclusion is clearly evident. [Citation.] Our supreme court has explained that where the historical facts are admitted or established, the controlling rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, the case presents a mixed question of fact and law for which the standard of review is ' "clearly erroneous." ' [Citation.] An administrative agency's decision is deemed clearly erroneous 'when the reviewing court is left with the definite and firm conviction that a mistake has been committed.' (Internal quotation marks omitted.) [Citation.] Pure questions of law, including questions of statutory interpretation, are reviewed *de novo.* [Citation.] Additionally, where the historical facts are established, but there is a question about 'whether the governing legal provisions were interpreted correctly by the administrative body, the case presents a purely legal question for which [the court's] review is *de novo.* ' [Citation.] " *Cunningham v. Schaeflein*, 2012 IL App (1st) 120529, ¶ 19.

Where a circuit court reviews an electoral board's decision, we review the decision of the board, not the circuit court. *Jackson*, 2012 IL 111928, ¶ 46; *Cinkus*, 228 Ill. 2d at 212.

¶ 16        As in any election dispute, we are mindful of that fact that "ballot [access] is a substantial right and not to be lightly denied." *Siegel v. Lake County Officers Electoral Board,* 385 Ill. App. 3d 452, 460-61 (2008). We must "tread cautiously when construing statutory language which restricts the people's right to endorse and nominate the candidate of their choice." *Lucas v. Lakin*, 175 Ill. 2d 166, 176 (1997).

¶ 17                          Solomon's Qualification for Office

¶ 18        The qualifications necessary for a candidate for the office of trustee on the board of an Illinois community college are set forth in section 3-7(c) of the Public Community College Act:

>        "Each member must on the date of his election be a citizen of the United States, of the
>        age of 18 years or over, and a resident of the State and the territory which on the date of
>        the election is included in the community college district for at least one year
>        immediately preceding his election."  110 ILCS 805/3-7(c) (West 2012).

There is no dispute that Solomon satisfies the foregoing requirements. Scholefield contended and the Board found, however, that the provisions of section 3-7(e) regarding the requirement that board members serve "without compensation" impose an additional requirement and that Solomon's admitted receipt of "compensation" as an adjunct professor in District 510 disqualified him from serving on the board. We disagree.

¶ 19        As in any case involving the construction of a statute, "[o]ur primary objective is to ascertain and give effect to the intent of the legislature. The best indication of legislative intent is the language employed by the General Assembly, which must be given its plain and ordinary meaning." *Goodman v. Ward*, 241 Ill. 2d 398, 408 (2011).

¶ 20        Whether we view this issue as the application of a statutory standard ("serve without compensation") to admitted facts (Solomon's status as an adjunct professor) under the clearly

erroneous standard or as a question concerning whether the governing standard was properly interpreted by the Board, which we review *de novo* (see *Goodman*, 241 Ill. 2d at 404 (candidate admitted that at the time of filing his petition he was not a resident of the judicial subcircuit from which he sought election; question presented was whether the electoral board properly interpreted residency requirement in Illinois constitution; *de novo* review applied)), we come to the same result: Solomon's receipt of compensation for his services as an adjunct professor is legally irrelevant to his qualification to serve as a trustee. Section 3-7(e) means, in its plain and unambiguous language, that trustees shall serve without compensation for their services as members of the board. Compensation received by trustees from employment or other endeavors unrelated to their board service does not disqualify them from serving. Further, nothing in section 3-7(c) conditions a candidate's eligibility for the office of trustee on his or her sources of income. Thus, Solomon's receipt of compensation from District 510 did not constitute a valid basis upon which to invalidate his nominating papers.

¶ 21       The Board further considered whether Solomon's adjunct professor position could potentially conflict with his service as a trustee and, concluding that it could, determined that this was an additional ground on which the objection should be sustained. This was error. As a creature of statute, an electoral board "may exercise only those powers conferred upon it by the legislature." *Delay v. Board of Election Commissioners*, 312 Ill. App. 3d 206, 209 (2000) (citing *Kozel v. State Board of Elections*, 126 Ill. 2d 58, 68 (1988)). It is "the unique province of the objector" to "raise issues [and] objections" to a candidate's petition and supporting papers. *Mitchell v. Cook County Officers Electoral Board*, 399 Ill. App. 3d 18, 27 (2010). Under section 10-8 of the Code, an objector's petition "shall state fully the nature of the objections to the certificate of nomination or nomination papers." 10 ILCS 5/10-8 (West 2012). The Code does

not permit amendments to objections. *Siegel,* 385 Ill. App. 3d at 456. "[W]hen 'evidence beyond specific objections' is introduced during the [hearing before the electoral board], that evidence must at least bear on some 'general objection that the candidate was called upon to answer' in the objector's petition." *Cunningham*, 2012 IL App (1st) 120529, ¶ 33 (quoting *Delay*, 312 Ill. App. 3d at 209). It is improper for an electoral board to raise its own objections to a nominating petition *sua sponte*. *Delay*, 312 Ill. App. 3d at 210; *Mitchell*, 399 Ill. App. 3d at 27.

¶ 22       Examination of Scholefield's objection reveals that, as it pertains to Solomon's qualifications for office, Scholefield claimed only that Solomon's receipt of "compensation" within the meaning of section 3-7(e) disqualified him from serving as a trustee. Nothing in the objection called upon Solomon to address whether his adjunct professor status could conflict with his service as a trustee because at some point he might be called upon to vote on salaries or other matters relating to District 510's adjunct professors. Thus, the Board exceeded its authority in invalidating Solomon's statement of candidacy on a ground never raised by Scholefield in his objections. Further, as the focus of this issue is a potential future conflict that may or may not arise in the future should Solomon be elected, it bears no relationship to the Board's essential function, *i.e.*, protection of the electoral process. See *Fortas v. Dixon*, 122 Ill. App. 3d 697, 701 (1984) (" 'when in the course of hearing objections to nominating papers, evidence beyond specific objections comes to the electoral board's attention, it cannot close its eyes and ears if evidence is relevant to the protection of the electoral process.' ").

¶ 23       Moreover, even if Scholefield's objection focusing on Solomon's receipt of "compensation" as disqualifying him from office could be construed to encompass this issue, we would nevertheless reject it as a basis for sustaining the objection. The Board concluded that "[i]f elected, [Solomon's] active union membership in the South Suburban College Adjunct

Faculty Association would render him unable to fulfill his duties of office with full and impartial loyalty." But nothing in the record proves, nor could it prove, that Solomon would choose to continue in either his professional or union roles if elected to serve as a trustee.

¶ 24    As support for its finding on this point, the Board cited *People ex rel. Teros v. Verbeck*, 155 Ill. App. 3d 81 (1987). In *Verbeck*, the defendant was elected as a member of the Rock Island County Board and later accepted a position as deputy coroner of Rock Island County. Given that (i) one of the duties of the county board was to fix the salary of the county coroner and provide a budget for the coroner's office, and (ii) the deputy coroner's salary was determined by the coroner subject to budgetary limitations established by the county board, the court found that the two offices were incompatible. "The potential for influencing [defendant's] superior's salary and budget and, ultimately, [defendant's] own salary, without more, renders defendant's offices incompatible." 155 Ill. App. 3d at 83-84. Further, the court found that because the offices were legally incompatible, defendant's offer to refrain from participating as a county board member in matters involving the coroner's office was not a satisfactory solution. "[T]he common law doctrine of incompatibility *** insure[s] that there be the appearance as well as the actuality of impartiality and undivided loyalty." (Internal quotation marks omitted.) *Id.* The remedy was defendant's ouster from his elected position.

¶ 25    *Verbeck* does not apply here. First, as Solomon points out, the common law doctrine of incompatibility applies in the context of an individual who holds two public offices. See *People ex rel. Fitzsimmons v. Swailes,* 101 Ill. 2d 458 (1984) (county board member and township assessor); *Verbeck* (county board member and deputy county coroner). An adjunct professor is not elected or appointed to that position, but is a part-time employee or independent contractor for an institution of higher learning. Second, while a circuit court in an action in *quo warranto*

has the authority to order forfeiture of an elected position, the legislature has conferred no such authority on an electoral board. Rather, the scope of an electoral board's authority in resolving an objection to nominating papers is to determine whether those papers are in compliance with governing provisions of the Code. *Goodman,* 241 Ill. 2d at 411. In effect, the Board's ruling here imposed a new eligibility requirement for trustee candidates: their outside employment or sources of income must never pose the possibility of a conflict with their service on the board. This was beyond the Board's authority and we, therefore, reject it as a basis for invalidating Solomon's certificate of candidacy.

¶ 26                              The Challenge to Circulators' Signatures

¶ 27          As noted above, Scholefield's second objection related to his claim that the circulators of Solomon's petitions failed to appear personally before a notary to have their signatures on the petition sheets notarized as required by section 7-10 of the Code. 10 ILCS 5/7-10 (West 2012) (requiring that a circulator's affidavit "shall be sworn to before some officer authorized to administer oaths in this State"). Scholefield argued and the Board found that Solomon "admitted" that two of his circulators did not appear personally before Barlow to sign their sheets. "[T]he evidence shows that the Candidate himself, admitted that the petition sheets of Brooks and Brown were not properly notarized because they never personally appeared before Barlow, the notary public." No other factual findings are included in the Board's decision. We find no such admission in the record and our review of the evidence presented at the hearing reveals no other basis upon which we can affirm the Board's decision on this point.

¶ 28          In a proceeding to contest a nominating petition, the objector bears the burden of proof. *Carlasare v. Will County Officers Electoral Board,* 2012 IL App (3d) 120699, ¶ 15; *Hagen v.*

*Stone,* 277 Ill. App. 3d 388, 390 (1995). We review the Board's factual findings on this issue under the manifest weight of the evidence standard. *Cinkus*, 228 Ill. 2d at 210.

¶ 29    A circulator's failure to appear before a notary public to have his or her signature notarized on petition sheets is a violation of section 7-10 of the Code and requires, at a minimum, that those petition sheets be invalidated. *Bowe v. Chicago Electoral Board*, 79 Ill. 2d 469, 470 (1980) ("the failure of the circulator to personally appear before the notary public invalidates the petition"). If an objector demonstrates a pattern of improper swearing, all sheets signed by the circulator and sworn to by the notary will be invalidated. *Cunningham*, 2012 IL App (1st) 120529, ¶ 39 ("This court has recognized that where the sheets of a nominating petition submitted by a circulator evidence a pattern of fraud, false swearing, and total disregard for the requirements of the Election Code, the sheets circulated by that individual should be stricken in their entirety. *Canter* [*v. Cook County Officers Electoral Board*], 170 Ill. App. 3d [364] at 368 [(1988)] ***). We have also recognized that the requirement that a circulator appear personally before a notary public "ensures the integrity of the circulation process, and in turn, the political process." *Id.* ¶ 40 (citing *Williams v. Butler*, 35 Ill. App. 3d 532, 537 (1976)).

¶ 30    Both Solomon, who testified in Scholefield's case-in-chief, and Barlow, who was called by Solomon, testified that Brooks and Brown came to the law office on the "weekend" before Monday, December 15 and signed their sheets in Barlow's presence. Other than the date of December 15 appearing on those sheets, no one ever suggested and, importantly, Scholefield failed to present any proof that Barlow notarized these sheets on December 15 outside the circulators' presence and after the circulators had earlier signed them. Solomon, on the other hand, signed his sheets in Barlow's presence during the late evening of December 14 or the early morning of December 15. We find no equivocation in Barlow's testimony on this point; she

consistently testified all three circulators signed their petition sheets in her presence, refuting the precise objection raised by Scholefield.

¶ 31     Although Scholefield criticized Solomon for not establishing that the December 15 date on Brooks' and Brown's sheets was a mistake on Barlow's part, that contention overlooks Scholefield's burden to establish any impropriety in Solomon's nominating papers.  Scholefield chose not to subpoena the circulators to testify at the hearing.  In any event, if Barlow actually notarized the circulators' signatures on December 14, but mistakenly wrote December 15, such mistake would not invalidate the petition sheets assuming the circulators appeared personally to sign the sheets in her presence.  The essential act required under the Code is the personal appearance of the circulator before a notary; the fact that the date on the notarization is off by one day does not impugn the integrity of the oath-taking process.  "Substantial compliance can satisfy a mandatory provision of the Election Code, however, as even a mandatory provision does not require strict compliance."  *Cunningham,* 2012 IL App (1st) 120529, ¶ 23 (transposing numbers of circulator's address did not require invalidation of petitions).

¶ 32     Scholefield failed in his burden to establish that the circulators did not sign the petition sheets in the presence of the notary public as he claimed in his objection.  The Board's contrary finding is not supported by the manifest weight of the evidence.  Finding no support for the Board's conclusion that the evidence at the hearing established a pattern of fraud in "total disregard for the requirements" of the Code, we hold the Board erred in invalidating the sheets signed by Brooks and Brown and, further, in invalidating all of the petition sheets on the ground that such a result was necessary to vindicate the integrity of the electoral process.

¶ 33                                   CONCLUSION

¶ 34    We reverse the Board's decision sustaining the objections to Solomon's candidacy and nominating papers and its determination that Solomon's name shall not appear on the ballot for the consolidated election to be held on April 7, 2015.  Due to the proximity of the Board's decision to the election date, and the fact that ballots had already been printed, the circuit court ordered the county clerk to issue a notice to voters in District 510 that Solomon had been removed from the ballot.  In order to counter the effects of this notice, we further direct the clerk of Cook County to withdraw that notice from circulation. The mandate shall issue immediately. Ill. S. Ct. R. 368(a) (eff.  July 1, 2006).

¶ 35    Reversed; mandate issued immediately.