**2021 IL 127080**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 127080)

ADONIS ELAM SR., Appellant, v. THE MUNICIPAL OFFICERS ELECTORAL BOARD
FOR THE VILLAGE OF RIVERDALE *et al.*, Appellees.

*Opinion filed April 21, 2021.*

JUSTICE OVERSTREET delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Garman, Theis, Neville, Michael J.
Burke, and Carter concurred in the judgment and opinion.

## OPINION

¶ 1    The question presented in this appeal is whether circulators who collected
signatures on behalf of a Democratic candidate for the consolidated primary
election and for an independent candidate for the consolidated general election
violated section 10-4 of the Election Code (10 ILCS 5/10-4 (West 2018)). The
Municipal Officers Electoral Board for the Village of Riverdale (Electoral Board)

determined that section 10-4 prohibits such a circumstance of "dual-circulation" and that, after invalidating improper signatures, the candidate whose eligibility is being challenged here failed to meet the minimum requirement to permit his name to be placed before the voters. On judicial review of the Electoral Board's decision, the circuit and appellate courts affirmed. 2021 IL App (1st) 210167-U. We granted leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2020). For the reasons that follow, we affirm the decision of the Electoral Board.

¶ 2                                                    BACKGROUND

¶ 3        In this election case, Adonis Elam Sr. is seeking election as an independent candidate to the office of village trustee of the Village of Riverdale at the consolidated general election occurring on April 6, 2021. Village officials in the Village of Riverdale run for office on a partisan basis.

¶ 4        On December 21, 2020, Elam filed nomination papers to be included on the ballot as an independent candidate. Attached to Elam's nomination papers were 26 pages of signatures collected and certified by multiple petition circulators.

¶ 5        On December 30, 2020, Albert Jones and Larry Dean (objectors) filed a petition objecting to Elam's nomination papers. In the petition, the objectors raised circulator-based objections, arguing that three individuals who circulated Elam's nomination papers for signatures as an independent candidate in the 2021 consolidated general election violated statutory law by previously circulating nomination papers on behalf of a Democratic candidate in the 2021 consolidated primary election. Elam filed a "motion to strike and dismiss or in the alternative for summary judgment" challenging, among other things, the applicability of section 10-4 of the Election Code.[1]

¶ 6        A full Electoral Board hearing was held on January 21, 2021. Following the conclusion of the arguments, the Electoral Board ruled that multiple signatures on Elam's nomination petitions were invalid because three circulators improperly circulated his petitions in violation of section 10-4. After invalidating and removing the improper signatures, only nine valid signatures remained, which was below the

---

[1]Elam also challenged whether the Electoral Board had subject-matter jurisdiction. That issue is not before this court.

mandatory minimum number of signatures required. On January 27, 2021, the Electoral Board issued its unanimous written decision, directing that Elam's "name shall be stricken from the ballot at the April 6, 2021 consolidated general election."

¶ 7    On the same day the Electoral Board issued its ruling, Elam filed a petition for judicial review in the Circuit Court of Cook County, arguing that the Electoral Board erred in striking his name from appearing on the ballot at the consolidated general election. Following a hearing, the circuit court rejected Elam's argument and upheld the Electoral Board's decision. In doing so, it relied on the same theory as the Electoral Board, namely, that Elam's nomination petitions were invalid because three circulators circulated his petitions after they had previously circulated petitions for a Democratic candidate in the consolidated primary in violation of section 10-4.

¶ 8    Elam next sought review from the appellate court. Again, he was unsuccessful. 2021 IL App (1st) 210167-U.

¶ 9    Immediately after the appellate court issued its decision affirming the decision of the Electoral Board, Elam petitioned this court for leave to appeal pursuant to Illinois Supreme Court Rule 315 (eff. Oct. 1, 2020). He also moved that we consider his petition on an expedited basis and, if we allowed it, that we set an expedited briefing schedule so that the matter could be resolved prior to the April 6, 2021, election. Elam's motion was granted. We allowed his petition for leave to appeal, ruled that his petition for leave to appeal would stand as his brief and set an expedited timetable for filing of the appellees' brief, a reply brief (if any), and the record. We also ordered that the case would be decided on the briefs without oral argument. The appellees' briefs have now been filed, and Elam elected not to file a reply brief. Because of time constraints present in this election case, on April 1, 2021, we entered an order affirming the judgment of the appellate court, with our opinion to follow. We now issue our opinion.

¶ 10                                ANALYSIS

¶ 11    The issue presented before this court is whether, given the salient uncontroverted facts, the Electoral Board correctly concluded that Elam was ineligible to run for village trustee pursuant to section 10-4 of the Election Code

- 3 -

(10 ILCS 5/10-4 (West 2018)) and that his name could not therefore appear on the ballot for the April 6, 2021, consolidated general election as a candidate for that office.

¶ 12    Section 10-4 of the Election Code states, in pertinent part, as follows:

"[N]o person shall circulate or certify petitions for candidates of more than one political party, or for an independent candidate or candidates in addition to one political party, to be voted upon at the next primary or general election, or for such candidates and parties with respect to the same political subdivision at the next consolidated election." *Id.*

¶ 13    The standard of review we apply to an election board's decision depends on what is in dispute. *Jackson v. Board of Election Commissioners*, 2012 IL 111928, ¶ 47. Because the issue in this case concerns a dispute as to whether the governing legal provisions were interpreted correctly by the administrative body, the case presents a purely legal question, for which our review is *de novo*. *Id.* Where, as here, the Electoral Board's decision is challenged in court pursuant to section 10-10.1 of the Election Code (10 ILCS 5/10-10.1 (West 2018)), the proceeding is in the nature of administrative review. *Jackson-Hicks v. East St. Louis Board of Election Commissioners*, 2015 IL 118929, ¶ 19. Accordingly, when such administrative proceedings reach our court on appeal, "it is the election board's decision, not the decision of the circuit or the appellate court, that is before us." *Id.* It goes without saying that access to a place on the ballot is a substantial right that we will not lightly deny (see *Jackson*, 2012 IL 111928, ¶ 37), and thus, we "tread cautiously when construing statutory language which restricts the people's right to endorse and nominate the candidate of their choice" (*Lucas v. Lakin*, 175 Ill. 2d 166, 176 (1997)).

¶ 14    When determining how the Election Code should be interpreted, we employ the same basic principles of statutory construction applicable to statutes generally. *Jackson*, 2012 IL 111928, ¶ 48. As such, our primary goal of statutory construction, to which all other rules are subordinate, is to ascertain and give effect to the intention of the legislature. *Id.* The best indication of that intent is the statutory language, which, when clear and unambiguous, must be construed as written, without reading into it exceptions, conditions, or limitations that the legislature did not express. *Id.*; see also *Jackson-Hicks*, 2015 IL 118929, ¶ 21.

- 4 -

¶ 15    The Election Code recognizes four types of elections: (1) the general primary election (held on the third Tuesday in March (10 ILCS 5/2A-1.1(a) (West 2018)), (2) the general election (held on the first Tuesday after the first Monday of November) (*id.*), (3) the consolidated primary election (held on the last Tuesday in February) (*id.* § 2A-1.1(b)), and (4) the consolidated election (held on the first Tuesday in April (except during Passover) (*id.* §§ 2A-1.1(b), 2A-1.1a). "General election" encompasses those elections held in even-numbered years, while "consolidated election" encompasses those elections held in odd-numbered years. See *id.* § 2A-1.1. Because the Democratic primary as well as the general election in this case are both odd-numbered year elections (April 6, 2021, and February 23, 2021, respectively), they are both "consolidated elections" for purposes of the Election Code.

¶ 16    We further note that municipalities may hold either partisan or nonpartisan consolidated elections for its officers. *Id.* § 2A-1.2(c), (d). Some are forced into a choice by law; some may opt into a different form by referendum. 65 ILCS 5/3.1-20-45, 3.1-25-20, 3.1-25-65 (West 2018). When partisan consolidated elections are held, candidates may run under the banner of an "established" political party, as a "new" political party, or if desiring not to be affiliated with a political party, as "independents." 10 ILCS 5/10-2, 10-3 (West 2018). With the exception of write-in candidacies, those are the only choices for a candidate in a partisan consolidated election. In the upcoming 2021 consolidated election, party affiliation is not barred by law, but rather, the Village of Riverdale selects its village trustees on a partisan basis. Thus, Elam was faced with a decision to run under the banner of an established political party, as an independent, or as a write-in candidate. He elected to run as an independent candidate, and therefore, he was required to circulate petitions only for the consolidated general election.

¶ 17    To determine whether the Electoral Board erred in invalidating certain petition signatures and removing Elam's name from appearing before the voters, we must decide whether the language of section 10-4 prohibits a person from circulating petitions for a political party in a partisan consolidated primary election and then later circulating petitions for an independent candidate in a consolidated general election.

¶ 18    Under section 10-4 of the Election Code,

"no person shall circulate or certify petitions for candidates of more than one political party, or for an independent candidate or candidates in addition to one political party, to be voted upon at the next primary or general election, or for such candidates and parties with respect to the same political subdivision at the next consolidated election." *Id.* § 10-4.

This provision is often referred to as the prohibition against "dual circulation" of nominating petitions. See generally *Schober v. Young*, 322 Ill. App. 3d 996, 1002 (2001); *McGuire v. Nogaj*, 146 Ill. App. 3d 280, 283 (1986); *McCaskill v. Municipal Officers Electoral Board*, 2019 IL App (1st) 190190, ¶ 52.

¶ 19    The three "dual circulators," who are the subject of the objections to Elam's candidacy, circulated petitions for Elam, an independent candidate, and petitions related to a Democratic candidate, both of whom were to be voted upon at the Village of Riverdale April 6, 2021, consolidated general election.

¶ 20    In his petition for leave to appeal, which serves as petitioner's brief, Elam correctly notes that there is a current split of appellate authority, specifically between the Appellate Court, Fourth District, opinion in *Sandefur v. Cunningham Township Officers Electoral Board*, 2013 IL App (4th) 130127, and the Appellate Court, First District, decision in *Wilson v. Municipal Officers Electoral Board*, 2013 IL App (1st) 130957, regarding the issue at bar.

¶ 21    In *Sandefur*, the electoral board for Cunningham Township removed independent candidate Laura Sandefur from the April 2013 consolidated general election for township assessor after numerous signatures were stricken from her nomination petition. Prior to circulating petitions as an independent candidate, Sandefur, along with the help of her husband, circulated nominating petitions as a Democratic candidate for township assessor. *Sandefur*, 2013 IL App (4th) 130127, ¶ 4. An objection was filed to Sandefur's nomination petitions for her candidacy as an independent candidate, asserting that Sandefur violated section 10-4 because Sandefur and her husband first circulated petitions for her as an established party candidate in the consolidated primary and then for her as an independent candidate in the consolidated general election. *Id.* ¶ 6. On administrative review, the circuit court affirmed the electoral board's decision. *Id.* ¶ 7. However, the appellate court reversed, finding that section 10-4 did not prohibit Sandefur (and her husband) from circulating petitions for a Democratic candidate in the consolidated primary along

with an independent candidate in the general election because the consolidated primary in February 2013 was a different election than the consolidated general election in April 2013. *Id.* ¶ 21. The *Sandefur* court reasoned that, if section 10-4 were read to include both the consolidated primary and the consolidated general election, the phrase " 'for such candidates *** with respect to the same political subdivision' " would, in the court's opinion, be completely unnecessary. *Id.* ¶ 20 (quoting 10 ILCS 5/10-4 (West 2010)). The *Sandefur* court determined that the dual circulation prohibition did not apply to these separate elections, or phases, despite the elections being held in the same election cycle, *i.e.*, odd-number-year election. *Id.* Elam urges us to adopt the reasoning in *Sandefur* and reverse the Electoral Board's decision. We decline to do so.

¶ 22    Rather, we find that the appellate court in *Wilson*, which was relied on by the Electoral Board and the courts below, correctly interpreted section 10-4.

¶ 23    In *Wilson*, the Calumet City electoral board removed candidate Brian Wilson from the April 2013 consolidated general election for mayor of Calumet City. 2013 IL App (1st) 130957, ¶ 5. In that case, Wilson first filed nomination papers as a member of the Democratic party for the consolidated primary election. *Id.* ¶ 3. However, after objections were filed to his candidacy, Wilson withdrew his candidacy and subsequently filed nomination papers for the same office as an independent candidate for the consolidated general election. *Id.* Objections to the candidate's papers were again filed. *Id.* ¶ 5. Relying on section 10-4, the electoral board struck all petitions circulated by the individual who had circulated on behalf of the candidate for the primary and general elections. *Id.* The circuit court affirmed. *Id.* ¶ 8. On appellate review, the *Wilson* court found that the clear statutory language of section 10-4 prohibited persons from circulating petitions for both an independent candidate and a party candidate in a given election cycle, whether it be a consolidated or a general election cycle. *Id.* ¶ 18. The *Wilson* court explained that the prohibition against circulating petitions on behalf of an independent candidate would otherwise be "a nullity" because petitions are not circulated for independent candidates in a primary election, while petitions for party candidates are generally only circulated for primary elections. *Id.* We find *Wilson*'s reasoning sound.

¶ 24    Section 10-4 of the Election Code states in relevant part that

"no person shall circulate or certify petitions for candidates of more than one political party, or for an independent candidate or candidates in addition to one political party, to be voted upon at the next primary or general election, or for such candidates and parties with respect to the same political subdivision at the next consolidated election." 10 ILCS 5/10-4 (West 2018).

When considering the statutory language as a whole, it is clear that the legislative purpose behind the provision is to prohibit individuals from changing party affiliation in the same election cycle.

¶ 25       As noted by the court in *Wilson*, independents do not circulate petitions in primary elections, whether the election is a consolidated or general election, because independent candidates do not run in primary elections. This remains true in partisan consolidated primary elections, which, like general primary elections, are held to determine which candidate of an established party advances to the consolidated general election and possibly competes with candidates of an opposing established party or independent or write-in candidates.

¶ 26       We find Elam's reliance on *Sandefur*'s holding that the prohibition of section 10-4 only applies to a particular election "phase" fatally flawed, as *Sandefur*'s analysis omits key statutory language central to an accurate reading of the provision. For example, the *Sandefur* court ignored certain words in the first clause of section 10-4 that "no person shall circulate or certify petitions *for candidates of more than one political party*, *or* for an independent candidate *or candidates* in addition to one political party, to be voted upon at the next primary or general election." See *Sandefur*, 2013 IL App (4th) 130127, ¶¶ 18, 20 (emphasis added to highlight omitted words). Omitting the italicized words fundamentally changes the meaning of the statute because these words demonstrate a clear legislative intent that an individual cannot circulate petitions for more than one political party or for an independent candidate. Likewise, the *Sandefur* court failed to consider the phrase "and parties" as incorporated in the last clause of section 10-4, "or for such candidates and parties with respect to the same political subdivision at the next consolidated election." *Id.* Again, this error in statutory interpretation led the *Sandefur* court to incorrectly conclude that "[t]he plain language of section 10-4 of the Election Code shows that the General Assembly chose not to make a specific distinction between primary and general elections in odd-numbered years." *Id.* ¶ 21.

¶ 27    *Sandefur*'s interpretation of section 10-4 is not only contrary to a plain reading of the statute, but it appears that the court focused its reasoning primarily on the last clause of section 10-4, which refers to "consolidated elections," without giving consideration to the other clauses and phrases of the provision. See *id.* ¶¶ 18-20. When reading the entire clause as a whole, it is clear that the main clause of the provision concerns partisan elections where established parties, new parties, and independents may circulate petitions for ballot access in the same election cycle. The remaining clause, on which the *Sandefur* court based its holding, prohibits an individual from circulating petitions for multiple candidates who may run in the same "political subdivision" in a consolidated election. See 10 ILCS 5/10-4 (West 2018).[2] This particular clause refers to *nonpartisan* consolidated elections where no candidate runs under the banner of an established party. Thus, it is logical for the legislature to include this clause as a way to further express its intent to prohibit "dual circulation" in nonpartisan consolidated elections—circulating for more than one candidate running for the same political subdivision. Again, here, the Village of Riverdale elects its village trustees on a partisan basis. Consequently, this clause is not dispositive to the issue in this particular case. Rather, the prohibition of "dual circulating" in general elections equally applies to partisan consolidated elections.

¶ 28    Additionally, the public policy implications of *Sandefur*'s holding would create an unfair advantage for established political parties and candidates running with established political parties whereby a political party, via its circulator, either tries to nominate an independent candidate whom it believes will siphon votes from a candidate of an opposing political party or tries to raid the other party's primary by nominating a partisan opponent who will be easier to defeat in the general election. See *Citizens for John W. Moore Party v. Board of Election Commissioners*, 794 F.2d 1254, 1260-61 (7th Cir. 1986) ("Circulators engage in personal, often high-pressure, solicitation. There is always some potential for deceit; there is also a potential for confusion if a circulator identified as the agent of one party suddenly solicits signatures for another party or an independent candidate."). This result is

---

[2]" 'Political or governmental subdivision' means any unit of local government, or school district in which elections are or may be held. 'Political or governmental subdivision' also includes, for election purposes, Regional Boards of School Trustees, and Township Boards of School Trustees." 10 ILCS 5/1-3(6) (West 2020). As noted earlier, municipal elections are held in odd-numbered years.

contrary to sound public policy of avoiding the possibility of voter confusion when, as in this case, a circulator identified as the agent of one party suddenly solicits signatures for another party or an independent candidate in the same election cycle. See *id.* at 1260 ("[Section 10-4] promotes the cohesion of political parties. Circulators are the cadre of any political movement. A party needs a cadre to exist. Once a circulator acts on a party's behalf to solicit signatures, he remains the party's agent (if he is active at all) for the electoral season. This helps political parties to act as entities selecting and offering candidates to the voters ***.").

¶ 29       The policy reasons for the "dual-circulator" prohibition become more evident in situations where a circulator solicits signatures for both a party candidate in the primary and an independent candidate in the general election, both of whom will challenge one another for the same elected office in the general election. Section 10-4 clearly prohibits situations such as this, as it would undoubtably cause voter confusion.

¶ 30       Thus, if we adopted *Sandefur*'s interpretation that the prohibition of section 10-4 only applies to election "phases," *i.e.*, only to petitions circulated in one of the four different types of elections identified under the Election Code, we would be rendering the prohibition on circulating petitions for both an established party candidate and an independent candidate a nullity. See *Bettis v. Marsaglia*, 2014 IL 117050, ¶ 13 ("It is improper for a court to depart from the plain statutory language by reading into the statute exceptions, limitations, or conditions that conflict with the clearly expressed legislative intent."). As such, we disagree with the *Sandefur* court's interpretation of section 10-4, and we hereby overrule that decision.

¶ 31       Accordingly, we hold that the Electoral Board correctly concluded that the nominating petition sheets circulated by three circulators were invalid under section 10-4 because those circulators previously circulated nominating petitions on behalf of an established political party candidate and independent candidate in the same election cycle. Striking those signatures rendered Elam's nominating papers invalid for having less than the mandatory minimum signatures required to appear on the ballot for village trustee of the Village of Riverdale.

## CONCLUSION

For the reasons stated, we affirm the judgments of the appellate and circuit court and affirm the Electoral Board's decision striking Elam's name from the ballot for the April 6, 2021, consolidated general election.

Affirmed.