2026 IL App (1st) 260169

FIRST DISTRICT
SECOND DIVISION
March 6, 2026

No. 1-26-0169

| | | |
|---|---|---|
| TEDORA BROWN, | ) | Appeal from the |
| | ) | Circuit Court |
| Petitioner-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 26COEL3 |
| THE STATE OFFICERS ELECTORAL BOARD; LAURA K. | ) | |
| DONAHUE, Chair; RICK S. TERVEN SR., Vice Chair; | ) | |
| JENNIFER M. BALLARD, Member; CRISTINA D. CRAY, | ) | |
| Member; TONYA L. GENOVESE, Member; CATHERINE S. | ) | |
| McCORY, Member; JACK VRETT, Member; CASANDRA | ) | |
| B. WATSON, Member; and BLANCA SOUDERS, Objector, | ) | Honorable |
| | ) | Anna M. Loftus, |
| Respondents-Appellees. | ) | Judge Presiding. |

JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Presiding Justice Van Tine and Justice Ellis concurred in the judgment and opinion.

**OPINION**

¶ 1 Petitioner Tedora Brown appeals the circuit court's order denying her petition seeking judicial review of the decision of the State Officers Electoral Board (Board) sustaining the objections of Blanca Souders and holding that Brown's name shall not be certified for the March 17, 2026, general primary election ballot. Brown argues that the Board exceeded its authority when it sustained Souders's petition on grounds not raised in the petition.

¶ 2 Due to time constraints on election matters, we issued an order on February 13, 2026, directing the Board to place Brown on the March 17, 2026, general primary election ballot. This is our decision following that order.

¶ 3     On November 3, 2025, Brown filed her nomination papers as a candidate of the Republican Party for the nomination to the office of representative in the United States Congress for the Eleventh Congressional District in the State of Illinois for the March 17, 2026, general primary election. Her nomination papers included 151 petition sheets containing 1,018 nominating signatures.

¶ 4     Souders filed a petition objecting to individual signatures on Brown's nominating papers for a variety of reasons, including (1) signature not genuine, (2) signer not registered at address shown, (3) signer resides outside district, and (4) signer not a member of and affiliated with the Republican Party. Following Souders's petition, a records examination of Brown's nomination papers was conducted and a detailed report was generated by the Board. The report showed that Souders challenged 337 signature lines and the examination overruled the objections for 106 lines and sustained the objections for 231 lines. Brown was required to submit 799 valid signatures for her nomination and after the review, Brown was 12 signatures short of the required number.

¶ 5     Following the records examination, each side is allowed to challenge the Board examiner's findings and request a hearing before the hearing officer. This motion is known as a "Rule 9 motion," pursuant to Rule 9 in the Board's rules of procedure. Ill. State Bd. Elections R. Proc. R. 9(g)(1) (adopted Nov. 18, 2025), available at https://www.elections.il.gov/AboutTheBoard/ElectoralBoard.aspx (choose "Rules of Procedure – 2026 General Primary Established Party" file to download from the menu at the bottom of the webpage) [https://perma.cc/4M3P-GD39]. Brown filed her Rule 9 motion on November 26, 2025, seeking to present evidence to rehabilitate and overturn the "sustained" results for multiple signature lines from her nominating papers. Brown attached evidence, including certifications of

voter information for several of the contested signature lines. Relevant here, Brown has narrowed her claim on appeal to three rejected signature lines from her nominating papers: sheet 29, line 5; sheet 98, line 2; and sheet 98, line 3. Souders challenged each of these three lines as "Signer is not registered to vote at the address shown."

¶ 6     For sheet 29, line 5, the signer provided a signature, left the optional section for a printed name blank, and listed an Aurora street address. Brown submitted a voter information certification from the Du Page County clerk that Adam J. Faber was registered at the address listed on the nominating sheet across from a signature. For sheet 98, line 2, the signer listed an address on "Bangor Ln" in the address box. The optional section for a printed name showed an address on "Bar Harbour Rd" that had two lines drawn through with the signer's name printed above the struck address. The signer on sheet 98, line 3, listed the same address on "Bangor Ln," as indicated in the preceding line 2. Brown submitted voter information certifications from the Du Page County clerk for sheet 98, lines 2 and 3, showing both signers were registered to vote at an address on Bar Harbour Road.

¶ 7     Souders filed a response, arguing, in part, that Brown's evidence was "facially insufficient and unsupported." Regarding sheet 29, line 5, Souders asserted that Brown failed to make a *prima facie* showing that the signer was registered at the address shown, stating "simply including a certification that *someone* is registered to vote at an address is not sufficient to show that the *signer* is registered at the address." (Emphases in original.) Souders's response for both of the remaining lines, sheet 98, lines 2 and 3, was that the signers' address was listed on "Bangor Ln," but the voter certification indicated an address on "Bar Harbour Rd." Souders maintained that Brown had failed to make a *prima facie* showing on these lines.

¶ 8     Following a hearing, the hearing officer issued its findings and recommendation to the

Board on December 17, 2025. The officer concluded, in relevant part, that Brown failed to meet her burden regarding the three contested lines. For sheet 29, line 5, the officer observed that Brown testified she did not circulate sheet 29 and could not confirm the signature on line 5 was Adam J. Faber, the name on the provided voter information certification. The hearing officer sustained an objection from Souders to Brown's testimony about a conversation with the circulator of sheet 29 about the identity of the signer as improper hearsay. The hearing officer found Brown "did not meet her burden and establish through admissible evidence that the signer on sheet 29, line 5, resides at the address indicated on" the voter certification.

¶ 9      The hearing officer observed that sheet 98, line 2, reflected an address on "Bangor Ln" but also referenced an address on "Bar Harbour" that was "crossed out." The voter information certification listed the address on "Bar Harbour Rd." The officer stated that Brown "did not circulate Sheet 98 and there was no testimony or evidence as to why the '***Bar Harbour' address was crossed out and favor [*sic*] of the clearly written '*** Bangor Ln' address." The officer found that Brown failed to meet her burden in overturning the Board's ruling that the signer resided at the address shown on line 2. The hearing officer made similar findings for sheet 98, line 3, noting the voter information certification listed an address on "Bar Harbour Rd," but the address listed on line 3 was on "Bangor Ln." Unlike in line 2, there was no address crossed out. The officer found that Brown failed to meet her burden to establish the signer resided at the address on the voter certification.

¶ 10      At the conclusion of his findings, the hearing officer found that Brown had rehabilitated 6 signatures, giving her a total of 793 signatures. She remained six signatures below the minimum required, and the hearing officer recommended Brown's name not be printed on the ballot.

¶ 11      On December 18, 2025, Brown filed a motion for exceptions to the hearing officer's

findings and recommendations with the Board. She argued, in part, that the hearing officer's ruling and recommendations relating to the three contested lines were "inconsistent" with the Board's rules and "disregarded the nature of the objector's objection as clearly stated in the objector's petition, therefore, amending the objector's petition."

¶ 12    On January 8, 2026, following a hearing, the Board issued its decision. The Board found sufficient evidence to rehabilitate five signatures but concurred with the hearing officer's rulings on the three contested signature lines. The Board held that Brown had collected and filed 798 valid signatures with her nomination papers, but she was one signature below the minimum required number of 799. The Board sustained Souders's objection to Brown's nomination papers and held that Brown's name shall not be certified for the March 17, 2026, general primary election ballot.

¶ 13    Brown subsequently filed a petition for judicial review in the circuit court, arguing that: (1) an objector's petition may not be amended, (2) an objector bears and must carry the burden of their own objections, and (3) the Board cannot sustain an objector's petition for reasons not stated or pled in the objector's petition. More specifically, Brown contended that the Board sustained Souders's petition for the three contested signatures based on different reasons than what was alleged by Souders in her petition. In her response, Souders maintained that she met her initial burden of proof when the records examination sustained her objections for the contested signature lines. She further responded, in part, that Brown failed to present sufficient evidence to establish that signers are who Brown represented they are.

¶ 14    The circuit court issued its written memorandum opinion and order denying Brown's petition for judicial review on January 30, 2026. In its order, the court found that the Board did not exceed its authority. Regarding the signature on sheet 29, line 5, the court held that the Board

5

did not exceed its statutory authority when it considered the identity of the signer, which did not constitute a new objection. The court also rejected Brown's argument that the Board considered new objections for the signatures on sheet 98, lines 2 and 3. For line 2, the court acted within its authority to determine which address was shown on the petition. For line 3, the signer's name and address were properly set forth in the specified columns and that listed address did not match the voter registration. The court ordered that Brown's name not appear on the ballot for the general primary election.

¶ 15    This appeal followed.

¶ 16    Brown raises the same argument on appeal as she asserted in her petition for judicial review in the circuit court: the Board exceeded its authority when it sustained Souders's petition based on grounds not raised in the petition. More specifically, Souders challenged the three signatures in her petition under the ground, "Signer not registered to vote at address shown," but the Board's findings went beyond this basis when it rejected the certified voter information provided by Brown.

¶ 17    Reviewing courts regard an electoral board as an administrative agency. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 209 (2008). On appeal, this court reviews the decision of the electoral board, not the decision of the circuit court. *Jackson v. Board of Election Commissioners of Chicago*, 2012 IL 111928, ¶ 46. Our standard of review depends on whether the dispute at issue involves questions of fact, law, or mixed questions of fact and law. *Id.* ¶ 47. The Board's findings and conclusions on questions of fact are deemed *prima facie* true and correct and will not be reversed unless they are against the manifest weight of the evidence. *Cinkus*, 228 Ill. 2d at 210. Where the historical facts are admitted or established, but there is a dispute as to whether the governing legal provisions were correctly interpreted by

the Board, the case presents a purely legal question, which we review *de novo*. *Jackson*, 2012 IL 111928, ¶ 47. Mixed questions of fact and law are "questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard." (Internal quotation marks omitted.) *American Federation of State, County & Municipal Employees, Council 31 v. Illinois State Labor Relations Board, State Panel*, 216 Ill. 2d 569, 577 (2005). We review a mixed question of fact and law under the clearly erroneous standard. *Cinkus*, 228 Ill. 2d at 211. A decision is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been committed. *Id.*

¶ 18    Brown asserts that the facts are undisputed and the issue on appeal is a question of law, and thus a *de novo* standard of review should be applied, "or at least a heightened level of the 'clearly erroneous' standard." Souders maintains that the appeal raises a mixed question of fact and law and the clearly erroneous standard should be employed. We determine that the issue on appeal is a question of law subject to *de novo* review, but we note that our findings would be the same under either standard.

¶ 19    For the first time on appeal, Souders asserts that Brown has forfeited issues by not raising them before the Board or the circuit court. However, Brown's memorandum on appeal raises the same issues presented in the circuit court but Souders did not assert forfeiture in the circuit court. Moreover, the trial court's order directly addressed the same arguments raised before this court. Thus, the record belies Souders's claim that Brown failed to assert these claims in the trial court. Additionally, even if Brown failed to raise these claims before the Board, she raised them in the trial court without an objection by Souders. A party can forfeit the opposing party's forfeiture of an argument by failing to raise it. *Monroy-Perez v. Sentry Select Insurance Co.*, 2025 IL App (1st) 241711, ¶ 29. Since Souders failed to raise forfeiture in the lower court, she has forfeited

this argument.

¶ 20    Turning to the merits of Brown's argument, the only question before this court is whether the Board exceeded its authority in sustaining the objections for reasons not stated or pled in Souders's petition. Section 10-8 of the Election Code (Code) requires that the objector's petition "shall state fully the nature of the objections to the certificate of nomination or nomination papers or petitions in question." 10 ILCS 5/10-8 (West 2024). In a proceeding to contest a nominating petition, the objector bears the burden of proof. *Bass v. Township Officers Electoral Board for Rich Township*, 2025 IL App (1st) 250092, ¶ 20 (citing *Solomon v. Scholefield*, 2015 IL App (1st) 150685, ¶ 28).

¶ 21    The Code does not allow any amendments to objections. *Solomon*, 2015 IL App (1st) 150685, ¶ 21; *Delay v. Board of Election Commissioners of Chicago*, 312 Ill. App. 3d 206, 210 (2000). Nor does the Code authorize an electoral board to raise its own objections to nominating petitions *sua sponte*. *Solomon*, 2015 IL App (1st) 150685, ¶ 21 (citing *Delay*, 312 Ill. App. 3d at 210). Additionally, the Board's rules of procedure specifically states, "An objection petition may not be amended once filed." Ill. State Bd. Elections R. Proc. R. 7(a)(1) (adopted Nov. 18, 2025).

¶ 22    We are guided by the principle that "access to a place on the ballot is a substantial right that we will not lightly deny." *Elam v. Municipal Officers Electoral Board for Riverdale*, 2021 IL 127080, ¶ 13. "[W]e 'tread cautiously when construing statutory language which restricts the people's right to endorse and nominate the candidate of their choice.' " *Id.* (quoting *Lucas v. Lakin*, 175 Ill. 2d 166, 176 (1997)).

¶ 23    Here, the only objection raised for the three signatures was "signer not registered to vote at address shown." Under the Board's rules of procedure, the review of this objection states:

"Signer Not Registered at Address Shown

The voter's registration information shall be examined. If the address on the voter's registration record does not match the address opposite their name on the petition, the objection shall be sustained. An affidavit from the voter attesting to their registration address will be deemed insufficient to rebut voter registration information supplied by the Board or local election authority.

NOTE**:** To the extent a voter may have moved during the period of time between the beginning of petition circulation and the close of petition filing, the programming used by the [Board] will note all addresses at which the voter was registered during the time period in question. If the address opposite the voter's name on the petition matches any one of the addresses noted, the objection will be overruled, and the burden placed upon the objector at the Rule 9 Signature Rehabilitation/Challenge Hearing to prove that the voter did not reside at such address on the date they signed the petition." Ill. State Bd. Elections R. Proc. Appendix B(I)(B) (adopted Nov. 18, 2025).

¶ 24    Because the Board removed Brown from the ballot leaving her candidacy one signature below the required number, we first address the single signature line from sheet 29, line 5. The issue is whether the Board erred in rejecting Brown's evidence to verify the signer was registered at the address shown on the nominating paper. As discussed above, sheet 29, line 5, shows a signature with the optional space for a printed name left blank and then lists a street address in Aurora. The nominating sheet was signed and sworn by a circulator. Souders did not challenge the genuineness or legibility of the signature or that the circulator's sworn statement was invalid.

¶ 25    To rehabilitate this signature, Brown submitted the voter information certification from the Du Page County clerk, showing an individual named Adam J. Faber was registered to vote at

the address listed on the nominating paper. According to the Board's rules, this certification matching the listed address should have been sufficient to rehabilitate this signature. Instead, the hearing officer found that Brown did not satisfy her burden to establish that the signature on line 5 was Faber, despite the address on the voter information matching the signature line. The hearing officer further found that Brown did not establish that the signer resided at the address shown. These findings go beyond the initial objection raised, signer not registered at address shown, and goes to the genuineness of the signature, which was not challenged by Souders. As the *Solomon* court found, "[i]t is improper for an electoral board to raise its own objections to a nominating petition *sua sponte*." *Solomon*, 2015 IL App (1st) 150685, ¶ 21. So too the hearing officer lacks authority to raise his own objections. See *id.*; *Delay*, 312 Ill. App. 3d at 210; *Mitchell v. Cook County Officers Electoral Board*, 399 Ill. App. 3d 18, 27 (2010).

¶ 26    Additionally, we review the requirements for a signer of a nominating petition under the Code. The cardinal rule in construing a statute, to which all others are subordinate, is to ascertain and give effect to the intent of the legislature. *Alvarez v. Pappas*, 229 Ill. 2d 217, 228 (2008). We must give the statutory language its "plain, ordinary, and popularly understood meaning," and "[w]here the language is clear and unambiguous, the statute must be given effect as written without resort to further aids of statutory construction." *Id.*

¶ 27    Section 7-10 of the Code sets forth what is necessary for a signer of a nominating petition.

> "Such petition shall be signed by qualified primary electors residing in the
> political division for which the nomination is sought in their own proper persons
> only and opposite the signature of each signer, his residence address shall be
> written or printed. The residence address required to be written or printed

opposite each qualified primary elector's name shall include the street address or rural route number of the signer, as the case may be, as well as the signer's county, and city, village or town, and state." 10 ILCS 5/7-10 (West 2024).

According to the plain language of the statute, a nominating petition requires only a signer's signature and his or her residential address, which was done here. Once Brown provided evidence that the address opposite the signature matched the registered address, she had met her burden of proof. Notably, Souders did not submit any contrary evidence to show that the signer was not registered to vote at the address listed on the nomination sheet. Her assertion that Brown was required to present evidence that "the unknown signer of Sheet 29, Line 5," was the individual identified in the voter certification goes to the issue of the genuineness of the signature. The signer was not required to print his name in the optional space. Notably, 6 of the 10 signers on sheet 29 did not print their name, but their identity was not questioned in this manner. Nothing in the Board's rules of procedure suggests that Brown was required to prove the identity of the signer, not when the only objection was to voter registration and not also to genuineness of signature. If the objector's point was that the person purportedly signing the petition was not, in fact, the person registered at the relevant address, then the objector should have made *that* objection. That, of course, is precisely the reason for the "signature not genuine" objection—that the person who signed the petition *is not* the person registered at that address. As discussed above, the Board's rules require only evidence that the signer was registered at the listed address. Brown supplied the certified voter information which confirmed the listed address and thus, she rehabilitated the sustained objection.

¶ 28    We find the decision in *Bass* helpful. There, after the candidate filed his nominating papers, the objector challenged his candidacy under numerous grounds, including that the

11

candidate's affidavit as circulator was false because he did not personally circulate the sheets and witness every person sign his or her name. *Bass*, 2025 IL App (1st) 250092, ¶¶ 3-4. At a hearing, the candidate testified that he personally circulated all but one of the nominating sheets. His mother and sister assisted in printing his address before he signed the sheet before a notary. *Id.* ¶ 6. The objector did not present any contrary evidence. *Id.* ¶ 27. The election board found the candidate was not credible and invalidated all of his nominating papers based on a pattern of fraud. *Id.* ¶ 8.

¶ 29    On appeal, the reviewing court reversed the election board's decision, observing that "[a] finder of fact may not simply reject unrebutted testimony." *Id.* ¶ 28 (citing *Bucktown Partners v. Johnson*, 119 Ill. App. 3d 346, 353-55 (1983)); see *Bazydlo v. Volant*, 164 Ill. 2d 207, 215 (1995) ("[T]he fact finder may not arbitrarily or capriciously reject unimpeached testimony."). The court pointed out that the objector, who had the burden of proof, presented no evidence that any of the signatures contained in the petition sheets were fraudulent or forgeries or that the candidate lied about circulating and witnessing each signature on the 76 petition sheets. *Bass*, 2025 IL App (1st) 250092, ¶ 28. The *Bass* court acknowledged that the county clerk had found some signatures invalid, but "there are a multitude of reasons why a signature can be deemed invalid that are not fraudulent." *Id.* ¶ 29. One such plausible reason, as the court noted, could be "that the signers were sloppy or did not take the time to sign in the manner that they normally sign." *Id.* The court concluded that the objector failed to prove a pattern of fraud and the election board's decision to strike the sheets was clearly erroneous. *Id.* ¶ 32.

¶ 30    In this case, Brown presented evidence demonstrating that the signer's address listed across from the signature matched the exact address in the certification of the voter information from the Du Page County clerk. Souders failed to offer any evidence to the contrary but instead

asserted a new objection, that Brown needed to prove who the signer was. The hearing officer erred in finding that Brown was required to establish that the signer resided at the address on the certified voter information. This went beyond the objection that signer was not registered to vote at the address shown and instead raised a question as to the genuineness of the signature. The Board then adopted this flawed finding and rejected the unrebutted evidence establishing that the signer of sheet 29, line 5, was indeed registered to vote at address shown. We find the hearing officer and the Board exceeded their authority when their review of the signature required Brown to prove the unraised issue of the genuineness of the signature. See *Delay*, 312 Ill. App. 3d at 210 (finding that the election board exceeded its authority by invalidating the candidate's nomination papers on a ground never raised in the objection). Accordingly, Brown sufficiently rehabilitated the signature on sheet 29, line 5, and this valid signature should be counted toward her total.

¶ 31     With the inclusion of the signature of sheet 29, line 5, Brown now has the required minimum number of signatures (799) to qualify for her name to be placed on the ballot as a Republican candidate for the office of representative of the Eleventh Congressional District in Illinois. Since we have found that Brown has the required number of signatures, we need not consider her claims related to the signatures on sheet 98, lines 2 and 3.

¶ 32     Based on the foregoing, we reverse the Board's decision finding Brown's nomination papers insufficient. We therefore order that the candidate's name, Tedora Brown, be certified and included on the ballot for the March 2026 general primary election. Mandate shall issue *instanter*.

¶ 33     Circuit court judgment reversed; Board decision reversed.

*Brown v. State Officers Electoral Board*, **2026 IL App (1st) 260169**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 26-COEL-3; the Hon. Anna M. Loftus, Judge, presiding. |
| **Attorneys for Appellant:** | McStephen O.A. Solomon, of Hazel Crest, for appellant. |
| **Attorneys for Appellee:** | Eric Hendricks, of Netzky, Olswang & Hanlon, LLC, of Chicago, for appellee Blanca Souders. |
| | No brief filed for other appellees. |